Pence *et al. v.* Waugh *et al.*

No. 16,236.

PENCE ET AL. *v.* WAUGH ET AL.

EVIDENCE.— *Will.— Execution of.— Contest.— Unsoundness of Mind.— Conditions Prior and Subsequent.*—In an action to test the validity of a will, where one of the grounds of contest is unsoundness of mind of the testator at the time the will was executed, conditions prior or subsequent to the execution of the will are proper evidence in determining the condition of the mind at the time of executing the will.

SAME.— *Cross-Examination.— Scope of.— Witness' Understanding of Question.*—On cross-examination, there is no error in inquiring of the witness if he understood a question propounded to him on examination in chief.

SAME.— *Answer Not Responsive.— When May Be Stricken Out.*—Where an answer is in nowise responsive to the question asked, it may be properly stricken out, although otherwise permissible.

SAME.— *Examination of Witness.— Objection to Question.— Ruling of Court.— Abandonment of Question.*—Where a question is asked a witness, which is objected to, and the objection is overruled, but the question is abandoned and left unanswered, no harm is done by the ruling of the court, even if the ruling had been wrong.

SAME.— *Objections.— When Made.— Motion to Strike Out.*—Objections to testimony, in practice, are usually addressed to the questions, and it is not a favored practice to permit counsel to delay until he learns whether the answer is favorable to him, and, if not, then move to strike it out.

SAME.— *Competent and Incompetent Commingled.— Appellate Tribunal Will Not Sift.*—The appellate tribunal, sitting as a court of review, will not sift out competent evidence from incompetent, when the appellant has permitted a mixture of the two to reach this court.

SAME.— *Incompetent.— Estoppel.*—A party who has opened a way for the admission of incompetent testimony, is in no position to object if the opposite side follows in such way.

SAME.— *Impeaching Question.— Form and Substance of.*—A question put to an impeaching witness need not be in the exact words of the question asked of the witness sought' to be impeached, but they should be identical as to time, place and substance, and should be so framed as to admit of a negative or an affirmative answer.

DEPOSITION.— *Objections, When Made.— Competency of Deponent.*—Where objection is made to a deposition on account of the incompetency of the deponent, such objection may be made when the evidence is offered, and as it is offered, the same as if the witness were

| | |
|---|---|
| 135 | 143 |
| 135 | 443 |
| 135 | 143 |
| 144 | 432 |
| 144 | 483 |
| 147 | 10 |
| 135 | 143 |
| 150 | 166 |
| 150 | 167 |
| 151 | 497 |
| 151 | 499 |
| 135 | 143 |
| 154 | 34 |
| 154 | 35 |
| 154 | 78 |
| 135 | 143 |
| 161 | 352 |
| 135 | 143 |
| f171 | 690 |

upon the stand before the court and jury; and it is not required to be made before the trial, under section 439, R. S. 1881.

WILL.—*Witness to Will, an Attorney who Drafted It.—Competency.— Waiver.—Attorney and Client.*—Where a testator selects as one of the witnesses of his will, an attorney whom he has employed to draft the will, by such act, the testator will be deemed to have waived all objections that might otherwise have been made to the testimony of such witness of facts acquired in the professional relation of attorney and client. The testator will be presumed to have acted with a desire to support his sanity and the validity of his will, and that, in choosing a witness, he intended to waive every obstacle to the witness' competency.

INSTRUCTIONS TO JURY.—*Erroneous Instruction.—Reversal of Judgment. —All Not Shown to be in Transcript.*—An instruction given which, of itself, is erroneous, will not work a reversal of the judgment, where the record fails to show that other instructions were not given than those contained in the transcript, the presumption being in favor of the action of the lower court, until the contrary is shown.

From the Whitley Circuit Court.

*T. R. Marshall* and *W. S. McNagny*, for appellants.

*J. S. Collins, A. A. Adams, A. Zollars* ánd *B. T. Calvert*, for appellees.

HACKNEY, J.—This appeal is from an action by the appellants to contest the last will of Joseph Waugh. The alleged grounds of contest were the unsoundness of mind of the testator, and that the will was unduly executed. All of the questions discussed arise upon the alleged error in overruling appellants' motion for a new trial.

One af the alleged causes for a new trial was the action of a juror in not basing his verdict upon the law and the evidence, but in following the answer, real or supposed, to his prayer for proper guidance in determining the rights of the parties litigant. This element of the motion is verified by the affidavit of one of the counsel for appellants, which affidavit is not in the record by bill of exceptions. The question upon the action of the juror will, therefore, not be considered. *Kleespies* v. *State*, 106 Ind. 383, and cases there cited.

Joseph Pence, a witness for the appellants, had testified to certain facts upon which he gave an opinion that the testator was of unsound mind. Certain of the facts were the failure of memory as age advanced, and the frequent statements of the testator that his memory was failing, and the witness was asked, on cross-examination, if "a great many old men in his community say their mind is not as good as it used to be?" This question, over the objection and exception of the appellants, was answered by saying: "I know some; yes." The point against this examination is that it is foreign to the case to inquire what men other than the testator said of their conditions of mind. Taken in the connection in which the question was asked, its manifest object was to ascertain if it was the opinion of the witness that all old men were of unsound mind because of the failure of memory. The answer was that he knew some men whose memories were weakened by age. Standing alone, the inquiry would probably not be strictly proper, but we are unable to observe its injury to the cause of the appellants. If the claim of the witness had been that age makes inroads upon the memory, as a rule, and that is as much as can be said of the question and answer, the effect upon appellants' case would rather have been beneficial than injurious.

In the course of the further cross-examination of said witness, he was asked: "Did you regard that contract as unreasonable, unreasonably high, or unreasonably low, so as to indicate the old man wasn't right?" The contract referred to was one between the testator and his grandson, concerning the management of the former's farm, and, in testing the strength of the opinion of the witness, as to mental capacity, it was proper to inquire whether, in his opinion, the contract, the making of

which formed a part of the facts upon which his judg-
ment of mental capacity was based, was a reasonable or
unreasonable transaction.    The witness, his intelligence,
and the value of the facts upon which his opinion rested,
were upon trial by the cross-examination, and if he re-
garded the transaction as a reasonable one, that fact took
the circumstance from the support it may have appeared
to give the opinion.    We do not regard the inquiry as
beyond the legitimate scope of a cross-examination.    Nor
was it error to ask the witness if, at the time he paid the
testator a sum of money, he regarded him as of unsound
mind.    Though the ultimate question is the condition of
mind at the time the will was executed, it has never been
doubted that prior or subsequent conditions are proper
in determining the condition at the particular time.    As
before said, the good faith of the witness is upon trial
under the cross-examination, and it is proper to consider
whether he continued business transactions with a man
he believed of unsound mind, or whether, in good faith,
he regarded him as *compos mentis* then.    *Rush* v. *Megee*,
36 Ind. 69.

The question asked and held improper in *Staser* v.
*Hogan*, 120 Ind. 207 (216), was:  "Mr. Mesker, would
you have taken a note from John C. Staser during the
last year of his life?   Did you ever hear any body in his
life question his sanity?''   The opinions of others than
the witness were not on investigation by the cross-exam-
ination, especially of those not under oath.    Nor was it
important what transactions the witness might have had
with the testator, but it would have been, as it was in
this case, proper to test the character of transactions
actually had, and which form a part of the basis of the
witness' opinion as to sanity.

Another question, on the cross-examination of Nancy
Waugh, is said to have been erroneous.    It was as to

whether she understood, in her examination in chief, the question as to her husband having been "afflicted with the infirmities of age," and a suggestion that it was meant to inquire if, as he grew older, he became more feeble. There is no impropriety in an inquiry as to whether a witness understood a question.

On the examination of one Wendle, on behalf of the appellant, it was asked that a certain conversation between the witness and the appellee David M. Waugh be stated. Over the objection of the appellees, the witness answered that "David spoke of making hay—it was wet, and the old man was crying about making hay, and he said he wished he hadn't taken the hay, and he said he would have nothing to do with the old man; that he was old and childish, and that he would not rent another * * foot of ground from him."

On motion of the appellees the answer was stricken out, and now the appellants contend that the words "and the old man was crying about making the hay," was the statement of such an occurrence as a fact, and that if the old man cried about making hay, it was a proper circumstance to be proven.

The answer involves in doubt whether the witness saw the old man crying, and states the circumstances as a fact independent of what David said or whether the words are from David's statement. However, as appellants contend that it was proper as an independent fact, stated as within the knowledge of the witness, it is in no manner responsive to the question asked, and formed no proper part of David's statement, and was, therefore, properly stricken out. On the trial, it was insisted that the conversation by David contained an admission by him that the testator was "old and childish," which admission was proper evidence against David. While appellants do not insist upon this position in this

court, it may well be doubted whether, if all the words of the answer were David's, the declarations of one contestee against the validity of the will may be given in evidence. *Shorb* v. *Brubaker*, 94 Ind. 165; *Ryman* v. *Crawford*, 86 Ind. 262; *Hayes* v. *Burkam*, 67 Ind. 359.

The physician who attended the testator in his last illness was a witness for the appellees, and after testifying to an extended acquaintance with him and as to the disease of which he died, was asked how long the disease had lasted, when appellants objected to anything ascertained from the patient or observed in the sick room, on the ground that such matters were privileged.

The court overruled the objection and appellants excepted. Without pressing the question asked or permitting an answer to it, the appellees asked another question as to the character of the illness instead of its duration, which question was answered without objection. The question asked and objected to having been abandoned and no answer given to it, no harm was done by the ruling, even if the judgment of the court in supporting such ruling had been wrong.

Some time later, in the course of appellee's examination of said witnesses, it was asked, in relation to the time of testator's sickness: "Do you know whether he walked around?" Which the witness answered: "He did; yes, sir; against my orders, though." Here counsel for appellants stated: "The court understands my objection goes to the entire testimony of the witness, so as not to keep repeating them. We desire the same objection to go to all of this,—that the relations were confidential." The witness had stated many things within his knowledge and observation not gained as a physician, and the objection having been made to all of the testimony when part of it was not subject to such objection,

it was not error to overrule the objection. *Binford* v. *Young,* 115 Ind. 174, and cases cited.

Objections, in practice, are usually addressed to the questions, and it is not a favored practice to permit counsel to delay until it may be learned if answers are injurious before objecting. The character of the answer is always indicated by the question asked, and opportunity is given for objection before answer. If the answer is not what might have been anticipated from the question, then it is not properly responsive, and the rights of the adverse party are not lost by delay in objecting, for he may then move to strike out the answer.

In this instance, the answer objected to and the evidence preceding it do not disclose whether the walking by the testator was in the sick room and observed by the physician while present attending him, or upon the streets or on the farm where the witness occupied no relation of confidence to him. Counsel for appellant say, in this connection, that "unfortunately matters of fact and professional observation are so blended that it will require a reading of the whole of his evidence in order to decide this question." Sitting as a court of review, and it being our duty, where we reasonably may, to presume in favor of the action of the trial court, and the burden resting upon the appellant in this court to make his cause for reversal clear, we can not sift out the chaff from the straw, where the appellant has permitted a mixture of the two to reach this court.

It is next contended that the court erred in permitting several non-expert witnesses for the appellees to state opinions as to the sanity of the testator upon facts which in whole or in part had not been detailed to the jury, and that in some instances questions were permitted, upon that subject, where the opinions were asked to be based in part on the facts detailed and in part upon ac-

Pence *et al. v.* Waugh *et al.*

quaintance, observation, and business transactions, regardless of such facts not having been stated to the jury. Appellees urge that appellants are in no position to insist upon the question here presented, even if it should appear that the rulings mentioned were erroneous, because of having, previous to such rulings, sought and obtained like evidence upon like questions.

We find that appellants, while introducing their evidence in chief, asked and received answers to questions subject to the objection here made against the questions of the appellees.

In *Perkins* v. *Hayward,* 124 Ind. 445, it was said: ''It has been often decided that a party by calling out incompetent evidence may preclude himself from successfully objecting to evidence of like character introduced by his adversary. The rule upon this subject is that evidence otherwise incompetent may be practically stripped of its objectionable character by the course pursued by the party who challenges its competency. If a party opens the door for the admission of incompetent evidence he is in no plight to complain that his adversary followed through the door thus opened,'' citing numerous cases.

By this rule the appellants are precluded. On behalf of the appellees, the deposition of the attorney who prepared the will and acted as one of the attesting witnesses was offered at the trial. After so much of the deposition had been read in evidence as disclosed the relation of the attorney to the testator as one employed to write the will, counsel for appellant objected to a question, for the stated reason that the relation of attorney and client was confidential, and that communications between them were privileged.

The court overruled the objection, which action we deem proper, so far as the objection related to the ques-

tion to which the objection was addressed, for the reason that the question did not call for any communication between the attorney and client, but asked only where the witness was employed to write the will.

Immediately following the ruling of the court, counsel for appellant said: "Will the court consider the same objection as being made to each question, down to question 20, of the deposition, and give us an exception in each case?" to which the court answered "yes, sir."

Questions and answers numbered 15 and 18 introduce fully the conversations between the witness and the testator as to the character and contents of the will then desired, the number and amount of advancements made, the reasons for discriminating between his children and his grandchildren, who should be named as executors, the description of his lands and the importance of ample provision for his widow during her lifetime. Appellants now insist that the action of the court in admitting this evidence was error.

Appellees contend that the objection could not be made upon the trial, but that, under section 439, R. S. 1881, "all objections to the validity of any deposition, or its admissibility in evidence, shall be made before entering upon the trial; not afterward."

As to the validity of the deposition, or its admissibility as a deposition, the objection must be made before the trial, and is usually made by a motion to suppress it in whole or in part. But, as provided by R. S. 1881, section 438, "objections to the competency of a deponent, or to the propriety of any questions proposed to him or answers given by him, may be made   *   *   *   in court." This objection is to the competency of the deponent, and does not constitute an objection to the validity of the deposition, or its admissibility as a deposition, and is, therefore, not required to be made before the trial, but,

according to the uniform practice in the trial courts, may be made when the evidence is offered and as it is offered, the same as if the witness were upon the stand before the court and jury.

Further objection is made to a consideration of the alleged error in admitting this evidence that the assignment of the ruling thereon, as cause for a new trial, is too general, in that it only indicates the evidence admitted by reference to the questions and answers in the deposition by their numbers and not by including the evidence.

We think that the cause is sufficiently stated where by reference to the proper and authentic files then existing. While no case directly in point has been called to our attention, the following seem to support this view: *Ball* v. *Balfe*, 41 Ind. 221, and *Elliott* v. *Russell*, 92 Ind. 526.

In the latter case it was held sufficient, if the cause assigned refer to a bill of exceptions on file. If it may be made sufficient, by reference to a bill of exceptions, we know of no reason why a deposition is not of sufficient character to support the reference. It is an authentic document, and a proper part of the files in the cause.

A more important question arises upon the insistence of the appellee that the selection of the attorney as an attesting witness was a waiver of the statutory privilege.

Says Beach, in his Law of Wills, page 65, section 39: "In making it requisite to the validity of a will that there should be attesting witnesses who shall subscribe their names to the writing, the law has a threefold purpose, the identification of the paper, the protection of the testator from deception and fraud, and the ascertainment of his testamentary capacity." Numerous authorities are cited to support this view, and we have no doubt

that the same objects were intended by the statute of this State.

In Chaplin on Wills, p. 92, it is said that "one of the very purposes of requiring witnesses at all is to provide for testimony from competent persons on the question, among others, of the testator's general capacity to make a will. Their position, too, in having been present at the execution, and having their attention called, with more or less directness, to the facts that the testator was doing some act calling for the exercise of some degree of judgment, and having themselves subscribed their names on the same paper signed by him, is such as to render their testimony of unusual importance. They may therefore testify whether, in their opinion, testator was, at the time of the execution of the will, sane or insane." Schouler on Wills, section 348, and no doubt other authors maintain the same doctrine.

*In Re Coleman,* 111 N. Y. 220, the question here raised was decided. There, the communications were held to be confidential and privileged. The statute creating the privilege provided that it should exclude the witness unless the privilege was expressly waived. This express waiver is required to be made, says the court, "in such manner as to show that the testator intended to exempt the witnesses, in the particular instance, from the prohibition imposed by the statute." Again, it is said: "He must have been aware that his object in making a will might prove to be ineffectual unless these witnesses could be called to testify to the circumstances attending its execution, including the condition of his mental faculties at the time." And, it is further said: "The law presumes knowledge on his part of its provisions, and that what he does deliberately is done with full comprehension of the legal effect of his act, and the duty which it imposes upon those who comply with his re-

quest. It would be contrary to settled rules of law to ascribe to the testator an intention, while making his will and going through the forms required to make it a valid instrument, to leave in operation the provisions of a statute which he had power to waive, but which, if not waived, might frustrate and defeat the whole object of his action. It can not be doubted that, if a client in his lifetime, should call his attorney as a witness in a legal proceeding, to testify to transactions taking place between himself and his attorney, while occupying the relation of attorney and client, such an act would be held to constitute an express waiver of the seal of secrecy imposed by the statute, and can it be any less so when the client has left written and oral evidence (meaning, by oral evidence, the request to the witness to attest the will) of his desire that his attorney should testify to facts, learned through their professional relations, upon a judicial proceeding to take place after his death? We think not. (*McKinney* v. *G. St., etc., R. R. Co.*, 104 N. Y. 352.) The act of the testator, in requesting his attorneys to become witnesses to his will, leaves no doubt as to his intention thereby to exempt them from the operation of the statute, and leave them free to perform the duties of the office assigned them, unrestrained by any objection which he had power to remove.'' This case was expressly approved in *Alberti* v. *New York, etc., R. R. Co.*, 118 N. Y. 77.

The privilege of the statute requires no express waiver in this State, and it may be waived not only by express waiver, but by implication. See *Lane* v. *Boicourt*, 128 Ind. 420.

Under the statute of wills in this State, R. S. 1881, section 2576, *et seq.*, the witnesses must be *competent*, and they are required, in probating, to give evidence that the will was not only duly executed, but that the

Pence *et al. v.* Waugh *et al.*

testator was competent to devise his property, and not under coercion at the time of executing the will. This statute existed concurrently with that creating the privilege, and may be said to have been within the knowledge of the testator when he selected his attorney as a witness. The testator will be presumed to have acted with a desire to support his sanity and the validity of his will, and that in choosing a witness he intended to waive every obstacle to his competency. The privilege, if sufficient to preclude the witness in a contest of the will, would be sufficient to preclude him in the probating of the will. We can not presume that the testator intentionally selected one as a witness to establish the identity of the will, the genuineness of the signature, and his mental capacity, who was to be incompetent for such purposes. The law presumes sanity and accepts the manifest intention of parties in determining the effect of their acts. Clearly, it must be presumed, that the testator meant that his witness should be competent to make proof for the probate of the will, and that he intended, by his selection, to waive the privilege of the statute in that regard, and it is no less clear that the desire and interest of the testator were as strong to support his will against contest, and that his selection, for that reason, was with like intention.

The statute required that he should select a competent witness, and as nothing stood in the way of the competency of the witness chosen, which the testator could not remove by his waiver, it will be presumed that his choice was with such intention, and the waiver is implied.

One Davis, a witness for the appellee, testified to the soundness of the testator's mind, and, on cross-examination, was asked if he had not, at a given time and place, said "to Daniel Jones, who was the assessor of that town-

ship, that said Joseph Waugh was old and childish; that he always complained about his taxes being too high; that they were going to break him up, and that he would have to go to the poor-house, and that you would rather assess all the rest of the township than said Waugh?'' Having failed to affirm that he had so stated, the appellant called Daniel Jones, in rebuttal, and, after stating that he and Davis had conversed, at the time and place indicated, he was asked the following question: ''I will ask you to state what he said to you in that conversation about his assessment of Waugh.'' To this question the court sustained appellees, objection. We do not doubt that the witness Davis was subject to the rule as to indirect impeachments, that the statements made out of court contrary to his testimony in court, were admissible, but it is insisted that the question to the impeaching witness should have been substantially in the form of the question asked of Davis, and not as a simple inquiry for the details of the conversation.

While we do not insist that the question to the impeaching witness should be in the exact words of the question asked of the witness sought to be impeached, we do hold that as to time, place, and substance of the conversation or statement, it should be identical, and should be so framed as to admit of a negative or an affirmative answer. This has been the rule of practice in the trial courts of this State, without exception, so far as we are advised, and we have no doubt that it is the safer and better practice, for, as said in *Sloan* v. *New York, etc., R. R. Co.*, 45 N. Y. 125, if it were ''otherwise, hearsay evidence, not strictly contradictory, might be introduced, to the injury of the parties, and in violation of legal rules.'' If less than the whole substance of the conversation inquired of in the foundation question is stated in the impeaching question, injustice is done the

witness whose credibility is in question, and the same may be said, with additional force, if the impeaching question include more than the substance of the foundation question. The foundation question here asked of the witness as to a statement that the testator was old and childish, that the testator had said "they would break him up, and that he would have to go to the poor-house," and that the witness had said that he would rather assess all the rest of the township than said Waugh. The impeaching question did not necessarily comprehend so much. The inquiry of Jones was as to what Davis said as to his assessment of Waugh, which will at once appear to be materially less than the substance of the inquiry of Davis. It can not be favored, as a rule of practice, to permit the impeaching witness to state the conversation in detail, except as the cross-examiner may call it out in testing the accuracy of the conclusion that the conversation denied and that affirmed are the same, for the reason already given, that to do so will admit matters not included in the foundation inquiry and often matters of mere hearsay. No case directly in conflict has been called to our attention, or has fallen under our observation, but we have no doubt that the ends of justice are subserved better by the practice which has always prevailed in this State. The court, therefore, did not err in refusing the evidence offered.

The appellants complain that the court's first charge to the jury cast the burden upon the plaintiffs of proving the material allegations of the complaint, both unsoundness of mind and undue execution, before they could recover. Such must be the construction of the charge named, when standing alone, but the court instructed the jury that if the element of unsoundness of mind were established, the plaintiffs might recover, thereby severing the causes of contest, and from anything appearing in

the record, we can not say that the jury were not fully instructed upon the cause of undue execution. It does not appear, from the record, that no other charges were given than those presented by the transcript, and we must presume in favor of the action of the lower court until error is clearly shown. This presumption is so broad as to include the giving of a charge clearly defining the cause of contest mentioned as undue execution, and stating it as a separate issue, proof of which alone would require a verdict for the plaintiffs. *Reinhold* v. *State*, 130 Ind. 467; *City of New Albany* v. *McCulloch*, 127 Ind. 500; *Lehman* v. *Hawks*, 121 Ind. 541.

Other alleged errors are discussed, but as we have, in the course of this opinion, considered like questions, we will not add to what has already been said.

Finding no error for which this cause should be reversed, the judgment of the circuit court is affirmed.

Filed Sept. 29, 1893.