LAWRENCE ET AL. *v.* ASHBA ET AL.

[No. 17,309. Filed March 5, 1945. Rehearing denied March 29, 1945.]

486

*McClure & Shenk,* and *Joseph A. Noel,* of Kokomo, and *Hurd J. Hurst,* of Peru, for appellants.

*A. H. Cole* and *H. K. Cuthbertson,* both of Peru, for appellees.

DRAPER, C. J.—The appellees, who are the three sons by her first marriage of Sarah E. Lawrence, deceased, brought this action against the appellants William T. Lawrence, individually and as executor of the last will and testament of Sarah E. Lawrence, deceased, and Iva B. Lawrence, for the specific performance of a contract; for an accounting; to set aside the conveyance of real estate and for a judgment declaring a trust and for the appointment of a trustee.

The court found for the appellees, ordered an accounting, vacated and set aside the conveyances hereinafter mentioned and ordered that all property, both real, personal and mixed possessed by the appellant William T. Lawrence and Sarah E. Lawrence at the time of her death be impressed with a trust in favor of the appellees, subject only to the right of the appellant William T. Lawrence to the enjoyment of the rents and net profits thereof and therefrom realized; and appointed a trustee to marshall and take charge and possession of all said property, to preserve the corpus thereof and collect the rents and profits, and make disposition of said property and the rents and profits thereof under the equitable powers and the supervision and direction of the court, retaining jurisdiction of the cause for the purpose of the accounting and administration of the trust.

The appellants filed their motions for new trial asserting (1) that the decision of the court is not sustained by sufficient evidence, and (2) that the decision of the court is contrary to law. They assert error in the overruling of those motions.

It appears that the father of the appellees died in 1905, and, in 1907 their mother married the appellant William T. Lawrence, who never had any children. In 1942 Mrs. Lawrence died. On July 1, 1937, Mr. and Mrs. Lawrence held some real estate by the entireties which they had been able to acquire largely as the result of her industry and thrift and a pension received by her because of the fact that the father of appellees was a civil war veteran. On that day they each made a will. Items II and III of the will of Mrs. Lawrence read as follows:

## "ITEM II.

"I will, bequeath and devise all my property, both personal and real, to my husband William T. Lawrence, absolutely and in fee simple.

## "ITEM III.

"In the event my husband, William T. Lawrence should predecease me, I then will, bequeath and devise all my property, both personal and real, to John J. Ashba, James A. Ashba and Charles R. Ashba, share and share alike."

The same clauses, but substituting the name of Sarah Lawrence for that of William T. Lawrence, appeared in the will of William T. Lawrence. There was no other difference in the wills except that his will included a direction to the executor to purchase a marker for their graves. In both wills James A. Ashba was nominated as executor.

After making these wills they disposed of the real estate then held by them and acquired other real estate, taking title thereto by the entireties, and that real estate was so held when she died, and is the real estate involved in this case.

A few hours after her death, William T. Lawrence, alone and unaccompanied by anyone, emptied their

safety deposit box and by inference it appears he took therefrom cash and other personal property of consid-. erable value, all of which he still retains. On October 13, 1942, her will was probated and he was appointed executor.

He married again on September 20, 1942, and eight days later made and caused to be made, conveyances intended to vest title to the real estate in his then wife, the appellant Iva B. Lawrence, said conveyances being intended to prevent appellees from ever acquiring the properties. Thereafter Mr. Lawrence stated to others that he had everything fixed and the boys wouldn't get a cent. There is no contention that Iva B. Lawrence furnished any consideration for the conveyances to her, or that she took without notice.

A will is generally ambulatory until the death of the testator, and mutual and reciprocal wills, unless founded on or embodying a binding contract, may be revoked at pleasure. 69 C. J. 1299, § 2719.

The burden of proving that mutual and reciprocal wills were made pursuant to a valid and enforceable contract is upon those who assert such to be true, and the evidence thereof must be full and satisfactory. *Edson* v. *Parsons* (1898), 155 N. Y. 555, 50 N. E. 265. Indeed, the rule requires the agreement to be established by evidence clear, definite, convincing, unequivocal and satisfactory, and to be valid and enforceable the contract must be fair and just, definite and certain in its terms and as to the subject matter, and based upon a sufficient consideration. *Plemmons* v. *Pemberton* (1940), 346 Mo. 45, 139 S. W. (2d) 910, 69 C. J. p. 1300, § 2722.

The mere fact that the wills under consideration contain identical provisions and that they were drawn

by the same scrivener, executed at the same time and before the same witnesses, with full knowledge on the part of each testator of the contents of both wills, and were clearly made for the accomplishment of a common purpose is not sufficient evidence of a contract to make wills to remain unrevoked at the deaths of the testators, although such circumstances are to be regarded as some evidence that they were made pursuant to an agreement. But where the contract does not appear in the language of the wills, and so the wills, unaided, are not sufficient to show the contract, the agreement may be proven by the testimony of witnesses who know the facts, by admissions of the parties and by the acts and conduct of the parties and other circumstances surrounding the making of the wills. *Plemmons* v. *Pemberton, supra.*

With these rules in mind we examine the evidence. It reveals that at the time of the making of the wills Mr. and Mrs. Lawrence called at a lawyer's office. It was there discussed that the funds that had gone into their property held as tenants by the entireties had in a major part been the funds of Mrs. Lawrence before she married Mr. Lawrence. There was conversation that they might want to sell that property and invest in other property. They seemed in accord and harmony and wanted to execute such deeds, wills or other instruments as would effectuate their intentions, which were that their property should be held intact as long as each of them lived, and when both were gone, they wanted the property to go to the three boys. Both agreed to make disposition of their property in that fashion. No request was made that a provision be included in the wills making them irrevocable during the lifetime of both or after the death of either. They left it to the lawyer to prepare whatever papers were

necessary to carry out their wishes and accomplish their purpose, and he prepared the wills above mentioned, he said, in conformity with their desires.

Before the death of Mrs. Lawrence she and Mr. Lawrence told one of the witnesses that they had made a will; that "it was to be a joint will while if she outlived him everything should be hers for lifetime then it was to be the boys; and if he outlived her why it should be the same way; her life earnings was in there and most of the money was her's and they decided that it was for the boys when they were gone." The evidence above recited was in no way contradicted by either of the appellants or any other witness, nor in any manner questioned or impeached.

In our opinion this evidence, taken with the fact that the wills contain substantially identical provisions, were drawn by the same lawyer and were executed at the same time before the same witnesses with full knowledge by each testator of the contents of the other's will, was sufficient to meet the requirements of the rule and sustain a finding that the wills were mutual and reciprocal wills made pursuant to a valid and enforceable contract.

It is true the parties did not request that a provision be included making the wills irrevocable, but they did not in any respect suggest or dictate the kind or terms of the instruments to be used to accomplish their purpose. They apparently knew nothing of such things and so left everything to the lawyer. It is apparent however that their minds did meet on a particular testamentary disposition of the property to accomplish a particular purpose, and that they intended the wills made pursuant thereto to remain unrevoked at their death. The mutual agreement of the makers of the wills was sufficient consideration to bind the

promisors. Equity will enforce such an agreement when well and fairly founded, and will not suffer one of the contracting parties to defraud and defeat his obligation, but will fasten a trust upon the property involved. *Plemmons* v. *Pemberton, supra; Sample* v. *Butler University* (1937), 211 Ind. 122, 4 N. E. (2d) 545, 5 N. E. (2d) 888; *Brown* v. *Johanson* (1921), 69 Colo. 400, 194 P. 943; 69 C. J., p. 1302, § 2726.

We agree with appellants that upon the death of a wife the husband takes all of their real estate held by entireties regardless of any attempt by the wife ■■ to make any disposition of it by testamentary devise, *Chaplin* v. *Leapley* (1905), 35 Ind. App. 511, 74 N. E. 546; *Young* v. *Biehl* (1906), 166 Ind. 357, 77 N. E. 406; and so in this case it must be held that he took title to the real estate by operation of law and not as any result of the will. But we do not agree that the contract under consideration could not operate upon real estate so acquired by Mr. Lawrence. In the Butler University case a husband and wife contracted with reference to real estate so held during their lifetimes, and pursuant to their agreement made mutual and reciprocal wills providing for its disposition at the death of the last survivor, and the contract was enforced. In this case the parties also contracted with reference to real estate so held. Mr. Lawrence did not agree to leave to the appellees only the property he would take under the will of his wife. His agreement was that if his wife died before he did, he would leave to appellees *all* of his property.

Nor can we agree that the wills drawn in this case manifest an intention on the part of the testators entirely different from that contended for by the appellees. The wills were intended to be and were irrevocable. If unrevoked by either testator, the exact results desired

by them would necessarily be accomplished, and the appellees would take all at the death of the testator who lived the longest. His agreement, however, was to leave the property to the appellees when he died. As in the Butler University case, *supra,* it seems clear the parties intended that the survivor should have the use and benefit of the property for life, he to have the right to dispose of any or all of the corpus of the estate for his reasonable needs in the event the income should be inadequate for that purpose, but he could not dispose of it to defraud and defeat his obligation.

No question concerning the statute of frauds was raised in this case.

We are not to be understood as approving or disapproving of the judgment entered insofar as it appoints a trustee to take immediate charge and possession of, and to administer the property, and seems to limit Mr. Lawrence to the enjoyment of the income during his lifetime. The appellants have not complained of the judgment in that regard and have not suggested a reversal because of the particular character of the relief granted. We therefore do not decide any such question, but leave the judgment as entered. The trust should, however, be administered by the court in accordance with the views herein expressed, and the discretion exercised in its administration may, if necessary, be reviewed by this court.

Judgment affirmed.

NOTE.—Reported in 59 N. E. (2d) 568.