**David E. MOORE, David E. Moore, Executor of the Estate of Carrie M. Moore, Appellant (Plaintiff Below),**

v.

**Virginia E. HARVEY, Appellee (Defendant Below).**

No. 2–1278A443.

Court of Appeals of Indiana, Second District.

June 30, 1980.

David M. Adams, Castor, Richards, Adams & Boje, Noblesville, for appellant.

Philip R. Correll, Indianapolis, for appellee.

SHIELDS, Judge.

David E. Moore (Moore) brought suit, personally and as executor of the estate of Carrie M. Moore (Carrie), against Virginia E. Harvey (Harvey) with regard to property transactions between Harvey and their now deceased mother Carrie. The trial court found in Harvey's favor and Moore appeals from this negative judgment raising the following issues:

(1) whether the trial court erred in overruling his motion for summary judgment;

(2) whether the trial court's judgment is contrary to law in failing to hold Car-

rie could not make an *inter vivos* disposition of her property contrary to the provisions of a joint will executed by Carrie and her husband; and

(3) whether the trial court's judgment is contrary to law in failing to hold Harvey exercised undue influence over Carrie in regard to certain property transfers.

We affirm.

The facts are as follows:

Carrie and her husband, Landis M. Moore, the parents of Moore and Harvey, executed a joint will on September 30, 1946. The will left all the property to the survivor of the two, and then listed a testamentary scheme effective upon the survivor's death. Two parcels of real estate, referred to as the "State Road 38 property" and the "24 acre property," were specifically devised to Moore and Harvey respectively.

Carrie's husband died in June, 1960. In the summer of 1973 Carrie was diagnosed as having cancer of the lung. At this point she was residing on one of the two houses situated on the 24 acre property. Moore was living on the other. In October, 1973 Carrie was hospitalized and eventually, in March, 1974, moved in with Harvey. Her condition worsened until her death on June 17, 1974. During her final days she deeded the two parcels in question to Harvey. The State Road 38 property was deeded to Harvey on March 14, 1974 and the 24 acre property was deeded on June 7, 1974. Each deed was signed by Carrie and acknowledged before Philip R. Correll as notary public. There were several witnesses at each of the deed executions.

I

■ Moore claims the trial court erred in denying his motion for summary judgment. The motion was based upon the fact the two deeds from Carrie to Harvey were notarized by "Philip R. Correll, Notary Public" when Correll was serving as town judge. Moore argues, citing IC 1971 33–16–2–7 (Burns Code Ed.), Correll vacated his notary public position by serving as town

judge. Thus, he claims the deeds were not properly notarized and cites *Cypress Creek Coal Co. v. Boonville Mining Co.*, (1924) 194 Ind. 187, 142 N.E. 645, for the proposition that, while lack of acknowledgment does not invalidate a deed, it renders it valid only between the parties thereto or those with actual notice. Moore argues he was neither a party nor one with notice, and hence the deeds were not valid as to him and the property should be returned to Carrie's estate.

The trial court properly denied Moore's motion. IC 33–16–2–7 provides, in pertinent part, as follows:

"No person holding any lucrative office of appointment under the United States or under this state, and prohibited by the Constitution of this state from holding more than one (1) such lucrative office, shall serve as a notary public, and his acceptance of any such office shall vacate his appointment as such notary; *but this provision shall not apply to any person holding any lucrative office or appointment under any civil or school city or town of this state.*" (emphasis added).

Whether or not the office of judge of the town court is a lucrative office is irrelevant as an officer who holds a lucrative office of any "civil or school city or town" is exempted under the plain terms of the statute.[1] Thus Correll's commission as a notary public continued and his notarization of the deeds was proper.

## II

Moore next argues the joint will of Carrie and Landis Moore was binding on Carrie and she could not dispose of the two parcels in question otherwise than as provided in the will. We disagree.

 A will is ambulatory until the death of the testator, and joint or mutual wills, unless accompanied by an express or implied contract not to revoke, may be re-

voked at pleasure. *Cramer v. Echelbarger,* (1968) 142 Ind.App. 374, 234 N.E.2d 864; *Lawrence v. Ashba,* (1945) 115 Ind.App. 485, 59 N.E.2d 568; 79 Am.Jur.2d *Wills* § 803 (1975). However, where the joint or mutual will contains or is accompanied by an enforceable contractual obligation equity will not allow one of the contracting parties to defraud and defeat his obligation, but will impose a trust upon property involved in favor of the beneficiaries under the joint will. *Sample v. Butler University,* (1936) 211 Ind. 122, 4 N.E.2d 545; *Estate of Maloney v. Carsten,* (1978) Ind.App., 381 N.E.2d 1263. The burden of proving a joint or mutual will was made pursuant to a valid and enforceable contract is upon the party who claims under and asserts such a contract as the basis for his cause of action. *Cramer v. Echelbarger, supra* ; 79 Am. Jur.2d *Wills* § 803 (1975). The evidence required to prove an agreement not to revoke " 'must be full and satisfactory, and indeed the rule requires the agreement to be established by evidence clear, definite, convincing, unequivocal and satisfactory.' " (citations omitted). *Cramer v. Echelbarger, supra,* 142 Ind.App. at 377, 234 N.E.2d at 866.

 Moore appeals a negative judgment. Thus he must establish the evidence at trial led to but one conclusion and the trial court reached an opposite conclusion. *In the Matter of the Adoption of Hewitt,* (1979) Ind.App., 396 N.E.2d 938.

The preamble to the will at issue reads as follows:

"We, Landis M. Moore and Carrie M. Moore, husband and wife, of Hamilton County, Indiana, having mutually agreed to make the devises and bequests hereinafter set out, and in consideration of the testamentary disposition of our property hereinafter made, hereby make, declare and publish this our joint will:"

---

1. Moore's sole argument is that the terms of IC 33–16–2–7 vacated Correll's notary public commission. He does not claim the exception is constitutionally infirm under Article 2, § 9 of the Indiana Constitution. However, as to Moore's ability to raise this issue, see *Davidson v. State,* (1893) 135 Ind. 254, 34 N.E. 972; and *Spegal v. Krag-Reynolds Co.,* (1898) 21 Ind. App. 205, 51 N.E. 959.

The remainder of the will disposes of the estate of the two parties who executed it by leaving the first decedent's property to the survivor in fee simple and, upon the death of that survivor, the will contains identical provisions for disposition of all the assets owned by the survivor at his or her death.

That the will is a joint will is clear. A joint will is simply " 'a single testamentary instrument that embodies the testamentary plan of two or more persons and is separately executed by each of the testators using the instrument.' " (citation omitted). *Estate of Maloney v. Carsten, supra,* 381 N.E.2d at 1267. However, it is a question of fact for the fact finder whether there is an implied or express contract contained within or without the will which would bind the survivor to the terms of the will and legally preclude Carrie from an *inter vivos* disposition of the property. Thus, the trial court had the duty, as fact finder, to ascertain if Carrie and Landis had the mutual intent to execute a joint *and* irrevocable will.

Because strong policy considerations exist against the restraint of property, the intention to deprive oneself of the right to freely dispose of his or her property must be clear. There must not only be a clear present intent to dispose of property but also a present intent that the property disposition be forever binding.

The only evidence offered by Moore at trial on the issue of an agreement of irrevocability was the will itself. Nevertheless, where the contract does not appear in the language of the will and the will, unaided, is insufficient to show the contract, the agreement may be proven by the testimony of witnesses who know the facts, by admission of the parties, and by the acts and conduct of the parties, and by other circumstances surrounding the making of the will. *See Lawrence v. Ashba, supra.* However, Moore failed to offer testimony at trial in regard to these matters. Hence, there was nothing other than the preamble for the trial court to consider in determining whether Carrie and Landis intended to bind each other to the terms of their joint will. The trial court determined Moore failed in his burden of establishing a contract of irrevocability. An examination of the preamble compels our agreement with the trial court's determination that the language in the preamble of the will is insufficient to establish an express or implied contract of irrevocability. The language in the preamble expresses a present agreement to effect a certain disposition after their deaths but does not expressly state an agreement that the presently agreed disposition is forever binding. Thus, the trial court correctly determined the preamble was not an express contract of irrevocability.

Moore cites *Estate of Maloney v. Carsten, supra,* for the proposition that an agreement not to revoke should be implied from the preamble to the will. The preamble to the will in that case read as follows:

"We, John F. Maloney and Lena N. Maloney, husband and wife, of Curubusco, Whitley County, Indiana, *desiring to protect each other in the disposition of our property and desiring to make final disposition thereof upon the death of the survivor of us,* do now make, publish, acknowledge, and declare this to be our joint last Will and Testament." (emphasis added).

This court held the emphasized language indicated the desire to bind each other to the will, clearly stated it was to be the "final disposition" and thus constituted an implied agreement of irrevocability.

We do not find the trial court was required, as a matter of law, to determine the Moore preamble clearly, definitely, convincingly, unequivocally, and satisfactorily establishes a valid and enforceable implied contract of nonrevocability. The Moore preamble, while speaking in terms of mutual agreement, contains no language of finality or irrevocability which compelled a finding of a contract not to revoke.

### III

Moore next argues the trial court judgment was contrary to law in failing to

invalidate the deed because of Harvey's undue influence over Carrie.

■ The definition of undue influence, sufficient to invalidate a deed, was defined in *Hunter v. Milhous,* (1973) 159 Ind.App. 105, 123, 305 N.E.2d 448, 459 as

"the exercise of sufficient control over the person, the validity of whose act is brought into question, to destroy his free agency and constrain him to do what he would not have done if such control had not been exercised."

Whether undue influence was exercised must usually be inferred from the facts and circumstances of the particular case, such as the situation of the grantor and her relation to others, her condition of health and its effect on body and mind, her dependence upon, and subjection to, the persons claimed to have influenced her, and their opportunity to wield such influence. However the mere fact the grantor, in executing a conveyance, was actuated by the motives of affection, esteem, and gratitude for favors, does not make out a case of undue influence. *Schrenker v. Grimshaw,* (1954) 124 Ind.App. 493, 119 N.E.2d 432.

■ Moore contends, citing *Hunter v. Milhous, supra,* a relationship of trust and confidence existed between Harvey and the deceased grantor, Carrie, and that when the party occupying the superior position has dealt with the other in such a manner as to obtain a substantial advantage, the law will presume an improper influence was exerted. *See also Westphal v. Heckman,* (1916) 185 Ind. 88, 113 N.E. 299; *Baker v. Whittaker,* (1962) 133 Ind.App. 347, 182 N.E.2d 442; *Scott v. Brown,* (1927) 90 Ind.App. 367, 157 N.E. 64.

■ While Moore has accurately stated the rule, it must be carefully applied to the facts presented to the trial court. We agree with Moore that a relationship of trust and confidence existed between Carrie and Harvey. However, more is required; it must be shown, for the proper application of the presumption, Harvey held a dominant or superior position over Carrie. This burden rested upon Moore. *Hutchens,*

*Admr. v. Hutchens,* (1950) 120 Ind.App. 192, 91 N.E.2d 182.

■ The question of the dominant position, under the evidence, was a question for the trier of facts. Moore established Carrie was dying of cancer of the lung at the time she signed the deeds. He also established Carrie had been living with Harvey since she discovered her illness. However, there were also three witnesses presented who testified that in Carrie's last few weeks, although showing some signs of physical weakening, she had no difficulty speaking and her thoughts appeared connected. Further, there was testimony that the property transactions were openly agreed upon and conducted.

Including Moore's testimony regarding Harvey's superior position, there was, at most, conflicting evidence regarding Harvey's alleged superior position. Thus, the evidence at trial did not lead to the sole conclusion that Harvey held a dominant or superior position over Carrie. The court committed no error by not presuming Harvey exercised undue influence over Carrie.

Judgment affirmed.

MILLER, P. J. (sitting by designation) and SULLIVAN, J., concur.