Earl **BROWN**, Personal Representative of the Estate of Velma Edwards, Earl Brown, Carolyn Ancil Royce, Kay Ancil Lake, Marvin D. Brown, Kathy Brown Speicher, and Beverly Small Wassouf, Appellants–Defendants,

v.

Bernard **EDWARDS**, Clarence Edwards, June Edwards Robbins, Gene Edwards, Mary Lou Edwards, Margaret Edwards, Linda Bocock McMahan, Maurice Cooper, Marsha Bricker, Melvin Cooper, Children of Doris Hause Cooper, Deceased,

David Collins, Michael Collins, Children of Anna Bell Collins, Deceased, Sherry A. Miller, Bob Everson, Jr., Children of Willa May Everson, Scott Edwards, Mike Edwards, Andy Edwards, Jay Edwards, and Travis Edwards, Children of Gerald Edwards, Deceased, Appellees–Plaintiffs.

No. 27A02–9312–CV–689.[1]

Court of Appeals of Indiana,
First District.

Sept. 19, 1994.

Transfer Denied Dec. 30, 1994.

1. This case was transferred to this office August 26, 1994, by direction of the Chief Judge.

James T. Beaman, James T. Beaman & Associates, Marion, for appellants.

Herbert A. Spitzer, Mark E. Spitzer, Marion, for appellees.

ROBERTSON, Judge.

Earl Brown, the personal representative, along with the other appellants (Brown), brings this appeal from the successful claim of the appellees (Edwards) against the estate of Velma Edwards. Brown presents the following issues:

I. Whether communications between Warren and Velma Edwards, their attorney, and the attorney's assistant, regarding the preparation of their Wills[,] should be excluded from evidence on the basis that such communications are protected by the attorney-client privilege in an action brought by a third party requesting the imposition of a constructive trust over one-half (½) of Velma Edwards' estate.

II. Whether Plaintiffs [Edwards] presented clear, convincing and unequivocal evidence that Warren and Velma Edwards [had] entered into a contract not to revoke their Wills executed on July 15, 1974.

III. Whether the Plaintiffs [Edwards] in a contract action seeking the imposition of a constructive trust over one-half (½) of Velma Edwards' estate are entitled to payment of their attorney fees from the assets of the aforementioned estate under Ind. Code § 29–1–10–14.

We affirm.

Warren and Velma Edwards were husband and wife. They executed last wills and testaments on July 15, 1974. Martin Lake was their attorney in the matter; he drafted the wills and witnessed them along with his office assistant, Shirley Ball. Each of the wills was to leave the respective net estates to the surviving spouse but, if the spouse happened not to have survived, was to leave one-half of the net estate to Warren's nieces and neph-

ews (Edwards) and the other half to Velma's nieces and nephews (Brown). Edwards claims the wills were mutual and reciprocal, based upon each spouse's promise not to revoke the survivor's will after the death of the other spouse.

Warren died in 1985. Almost all of his property had been jointly held with Velma, so his will was never probated. On October 16, 1990, Velma executed a last will and testament which revoked all prior wills. In the document, she devised all of her property to her nieces and nephews and made no provision for Warren's nieces and nephews. She died about a month later, and the 1990 will was admitted to probate.

Edwards then filed a complaint. In the first count, Edwards contested the validity of the 1990 will. In the second count, Edwards sought an equitable, constructive trust over one-half of Velma's estate, based upon the contention that the 1974 wills were mutual and reciprocal and had been made pursuant to a contract not to change the provisions in them after the death of either testator. In essence, Edwards claimed Velma had breached the contract when she had revoked her 1974 will.

Edwards sought summary judgment on the second allegation, which the trial court denied. The trial court granted partial summary judgment on two issues which Brown contests in this appeal. The trial court determined that the attorney-client privilege did not preclude the testimony of the attorney or his assistant, both of whom had participated in the preparation of the 1974 wills, and that Edwards was entitled to recover attorney's fees under Ind.Code 29–1–10–14.

The parties proceeded to trial on the breach of contract claim and held the will contest claim in reserve pending the results obtained from the trial. Edwards prevailed at the trial, and the trial court both imposed the requested constructive trust and awarded Edwards attorney's fees.

## I

Brown claims the testimony of the attorney and his assistant, both of whom had participated in the preparation of the 1974

wills, should not have been admitted because the testimony violated the attorney-client privilege. The trial court determined that the testimony was "admissible without violation of the attorney/client privilege."

▇ Indiana has long accepted the attorney-client privilege. *See Jenkinson v. State* (1840), 5 Blackf. 465. Indiana Code Section 34–1–14–5 recognizes the privilege as well:

> Except as otherwise provided by statute, the following persons shall not be competent witnesses:
>
> \*   \*   \*   \*   \*   \*
>
> (2) Attorneys, as to confidential communications made to them in the course of their professional business, or advice given in such cases.

The statute has not changed the rule of common law. *See Kern v. Kern* (1900), 154 Ind. 29, 33–34, 55 N.E. 1004, 1006. Also, the privilege extends to the agent of an attorney under some circumstances. *See Brown v. State* (1983), Ind., 448 N.E.2d 10, 14.

▇ The general rule of privilege excludes testimony of communications between a client and her attorney regarding the preparation of a will. *Briggs v. Clinton County Bank & Trust Co.* (1983), Ind., 452 N.E.2d 989, 1012. An exception, however, has been engrafted upon the general rule. *Id.* The *Briggs* court stated that the exception applies, "[a]fter the client dies ... and a controversy arises concerning the validity of the will or between the claimants under the will ..." *Id.*

▇ The parties agree that Velma's 1990 will, if valid, revoked her 1974 will. A mutual will, like any other, is revoked by the execution of a subsequent will inconsistent therewith. *Manrow v. Deveney* (1941), 109 Ind.App. 264, 33 N.E.2d 371 (quoting 69 C.J. p. 1300, § 2720). Equity will enforce the agreement, however:

> when well and fairly founded, and will not suffer one of the contracting parties to defraud and defeat [her] obligation, but will fasten a trust upon the property involved.

*Lawrence v. Ashba* (1945), 115 Ind.App. 485, 493, 59 N.E.2d 568, 571. We assume, for the purposes of Edwards' contract claim, that the 1990 will is valid and that it revoked the 1974 will. The parties have done likewise, as they held the matter of the will contest in reserve pending resolution of the contract claim.

■ We will first determine whether a controversy has a risen "concerning the validity" of either will. *See Briggs,* 452 N.E.2d at 1012. In the second allegation of the complaint, Edwards raised a claim against the estate, founded on contract, as contemplated by I.C. 29-1-14 (claims against the estate). *See Carroll v. Swift* (1894), 10 Ind. App. 170, 172, 37 N.E. 1061, 1062. *Cf. Manrow,* 109 Ind.App. at 267, 33 N.E.2d at 372 (the matter of the contractual aspect of wills executed in accordance with a contract does not arise upon probate but may arise when the agreement is sought to be established as a claim against the estate) (quoting Atkinson on Wills at page 176). A claim against the estate created by the 1990 will does not concern itself with the legitimacy of the will itself and therefore cannot be said to constitute a controversy against the 1990 will's very validity. Further, Edwards' claim against the estate created by the 1990 will cannot be said to have established a controversy about the validity of a revoked will, assuming the 1990 will truly revoked the 1974 will. Any controversy about the validity of either of Velma's wills is reflected only in the first count of Edwards' complaint, which contested the validity of the 1990 will. The parties did not try this issue. Thus, because the 1990 will is assumed valid and is assumed to have revoked the 1974 will, no controversy has arisen about the validity of either will under the breach of contract claim.

We next determine whether a controversy has arisen "between claimants under" either the 1974 will or the 1990 will. *See Briggs,* 452 N.E.2d at 1012. Edwards claims that Velma breached her agreement with Warren not to revoke her 1974 will and, in essence, that the breach damaged Warren's nieces and nephews as third-party beneficiaries of the contract. *See In re Estate of Von Wendesse* (1993), Ind.App., 618 N.E.2d 1332 (dis-

cussing third-party beneficiary under a contract to make a particular disposition of property by will). As a part of the proof of this claim, Edwards relies upon the 1974 wills. This reliance does not, however, make Warren's nieces and nephews "claimants under the will" of 1974. If, as all assume on appeal, the 1990 will is valid, then it revoked the 1974 will. Warren's nieces and nephews cannot be said to be claimants *under* a revoked will but were, instead, claimants *against* the estate created by the 1990 will.

Likewise, as claimants *against* the estate created by the 1990 will, Warren's nieces and nephews were not claimants *under* either Velma or the 1990 will. Our supreme court has provided:

> While the rule announced in *Gurley v. Park* [ (1893), 135 Ind. 440, 35 N.E. 279 (stating the general rule of privilege) ], *supra,* is doubtless the correct one in disputes between the client's representatives on the one hand, and strangers on the other, we do not think it applies where both the litigating parties claim under the client ... We regard this qualification of the general rule as a very material one, and, to the extent that the opinion in *Gurley v. Park, supra,* conflicts with the view we have expressed, that case is overruled.

*Kern,* 154 Ind. at 34-35, 55 N.E. at 1006. Edwards filed a claim, founded on contract, against the estate created by the 1990 will. Warren's nieces and nephews were, therefore, strangers to that estate. *See Voelker v. Estate of Voelker* (1979), 182 Ind.App. 650, 396 N.E.2d 398, 399 (stranger to the estate brought two claims which sought specific performance of an alleged promise to convey, either by gift or devise, certain real and personal property). As one court stated the matter:

> If claimants were claiming as legatees under the will of testatrix, or as her heirs at law, they would be claiming under or through the testatrix. However, they do not so claim but on the contrary their claim is based upon breach of contract by testatrix which of necessity makes the same adverse to testatrix and her estate. Therefore, inasmuch as claimants are not claiming under or through the testatrix but

are asserting an adverse claim against the estate represented by the executor, who does claim under the testatrix, the common law rule of privileged communications between client and attorney embodied in [the statute] applies ...

*In re Smith's Estate* (1953), 263 Wis. 441, 448, 57 N.W.2d 727, 730 (due to privilege, attorney was not competent to testify about former wills to aid in the proof of a contract to make a mutual and reciprocal will). Warren's nieces and nephews were not claimants under either of the wills or, with regard to the issue tried, under Velma herself. Thus, Edwards was not entitled to the exception to the general rule of privilege.

■ Even so, the attorney-client privilege may be expressly or implicitly waived. *Pence v. Waugh* (1893), 135 Ind. 143, 154, 34 N.E. 860, 863. Our supreme court has noted:

> In *Pence v. Waugh*, 135 Ind. 143 [34 N.E. 860], it was held that, by selecting the attorney who drew the will as one of the subscribing witnesses, the client waived the objection to the competency of the witness arising from the professional relation such witness sustained to the client.

*Kern*, 154 Ind. at 35, 55 N.E. at 1006. As a part of its reasoning, the *Pence* court stated:

> Clearly, it must be presumed, that the testator meant that his witness should be competent to make proof for the probate of the will, and that he intended by his selection, to waive the privilege in that regard, and it is no less clear that the desire and interest of the testator were as strong to support his will against contest, and that his selection, for that reason, was with like intention.

*Pence*, 135 Ind. at 155, 34 N.E. at 864. The attorney who had drafted the will in *Pence* introduced fully, by way of deposition, conversations between the attorney and the testator as to the character and contents of the will then desired, the number and amount of advancements made, the reasons for discrimination between his children and his grandchildren, who should be named as executors, the description of his lands and the importance of ample provision for his widow during her lifetime. *Pence*, 135 Ind. at 151, 34 N.E. at 862.

■ As noted below in this opinion, the evidence is sufficient to support the determination that, in 1974, Warren and Velma entered into an enforceable contract not to revoke their mutual, reciprocal wills. Velma and Warren chose Martin Lake, their attorney, and Shirley Ball, his assistant, to witness the wills which were the subject of the contract. In so doing, Velma and Warren waived the attorney-client privilege. By choosing their attorney and his assistant to witness the wills, Velma and Warren implicitly requested that they defend the 1974 testamentary scheme against attack, regardless of any confidentiality which previously may have attached to the conversations among the four. That is, at the time, Velma and Warren intended that Lake and Ball should be competent to divulge the scope of their testamentary intent with regard to the 1974 wills if the mutual and reciprocal nature of the wills were ever questioned. The trial court properly decided that the testimony was admissible without violation of the attorney-client privilege.

## II

■ Brown claims the evidence is not sufficient to satisfy the burden of proof. On a review of the sufficiency of the evidence, we will not reweigh the evidence or determine the credibility of witnesses but will consider only the evidence that supports the judgment and the reasonable inferences to be drawn from that evidence. *Lawyers Title Insurance Corp. v. Pokraka* (1992), Ind., 595 N.E.2d 244, 247. Only where the record contains no facts or inferences to support the findings are those findings clearly erroneous. *Id.*

The burden of proving that mutual and reciprocal wills were made pursuant to a valid and enforceable contract is upon those who assert such to be true, and the evidence thereof must be full and satisfactory. Indeed, the rule requires the agreement to be established by evidence clear, definite, convincing, unequivocal and satisfactory, and to be valid and enforceable the

contract must be fair and just, definite and certain in its terms and as to the subject matter, and based upon sufficient consideration.

The mere fact that the wills under consideration contain identical provisions and that they were drawn by the same scrivener, executed at the same time and before the same witnesses, with full knowledge on the part of each testator of the contents of both wills, and were clearly made for the accomplishment of a common purpose, is not sufficient evidence of a contract to make wills to remain unrevoked until the deaths of the testators, although such circumstances are to be regarded as some evidence that they were made pursuant to an agreement. But where the contract does not appear in the language of the wills, and so the wills, unaided, are not sufficient to show the contract, the agreement may be proven by the testimony of witnesses who know the facts, by admissions of the parties and by the acts and conduct of the parties and other circumstances surrounding the making of the wills.

*Lawrence*, 115 Ind.App. at 490–491, 59 N.E.2d at 570 (citations omitted).

Brown cites *Wisler v. McCormack* (1980), Ind.App., 406 N.E.2d 361 (quoting *In re Estate of Mueller* (1975), 26 Ill.App.3d 163, 166–67, 324 N.E.2d 674, 676–677), which involved a joint will of a husband and wife. Brown then identifies five "guidelines" from the case, three of which he claims the evidence here does not meet:

> It is undisputed in the case at bar that an agreement not to revoke does not appear in Velma's Will. Moreover, there is no intent of Warren and Velma to merge their estates into one corpus. Finally, there is no limitation on the use of the property of the surviving spouse in either Warren or Velma's Wills.

The *Wisler* case, however, involved a joint will which was alleged to have solely embodied "an agreement by each of the testators to dispose of their respective estates in the manner specified in such will." *Id.* at 362. The case before us does not involve such a situation.

Further, no single verbal formula is necessary to create a contract not to revoke a will. *Kitchen v. Estate of Blue* (1986), Ind.App., 498 N.E.2d 41, 44–45. Even an implied agreement not to revoke the will is sufficient. *See Estate of Maloney v. Carsten* (1978), 178 Ind.App. 191, 381 N.E.2d 1263.

The 1974 wills contain identical provisions, were drawn by the same scrivener, were executed at the same time, were executed before the same witnesses, were executed with full knowledge on the part of each testator of the contents of both wills, and were clearly made for the accomplishment of a common purpose. Such circumstances are some evidence that the wills were made pursuant to an agreement. *Lawrence*, 115 Ind. App. at 491, 59 N.E.2d at 570. Further, the testimony of Lake and Ball aid in the proof of the agreement. As the trial court noted:

> Although there is not contract language in the wills describing the wills to be mutual and reciprocal, all of the evidence at trial clearly showed that the wills were drafted to effectuate Velma and Warren's intention that their assets be divided one-half (½) to each side of their families. Testimony of Martin Lake and Shirley Ball revealed that the legal effect of mutual and reciprocal wills was explained to Warren and Velma. Moreover, Warren and Velma were given the opportunity to include a paragraph in their wills expressing an intention that the wills *not* be considered mutual and reciprocal and that their freedom to later write a new will not be restricted. Ball and Lake both testified Velma and Warren did not want this paragraph and they were "emphatic" their estate be divided equally between their two (2) families.

The evidence in the record supports these statements. As Lake testified, Warren and Velma "made it quite clear that they did not want the wills to be changed by either one at their death" and emphatically reaffirmed that they did not want the survivor to have the freedom to change the will after the death of the other (R.385, 396). The trial court concluded:

> It is clear to the Court, then, there was an agreement between Velma and Warren not to revoke their mutual wills and that their

estate pass one-half (½) to each side of their families.

The evidence and the reasonable inferences support the findings of the trial court. Those findings are not clearly erroneous and support the court's conclusions and judgment. Brown does not challenge the agreement on any other element or condition of a valid contract. We therefore conclude that the evidence is sufficient to support the determination that, in 1974, Warren and Velma entered into an enforceable contract not to revoke their mutual, reciprocal wills.

### III

The trial court awarded attorney's fees to Edwards out of the estate pursuant to I.C. 29–1–10–14, which provides:

> When any person designated as executor in a will, or the administrator with the will attached, or if at any time there be no such representative, then any ·devisee therein, defends it or prosecutes any proceedings in good faith and with just cause for the purpose of having it admitted to probate, whether successful or not, he shall be allowed out of the estate his necessary expenses and disbursements including reasonable attorney's fees in such proceedings.

Brown claims the award was erroneous.

 Where a purported will is offered for probate in good faith, those who have the prior right to prosecute its probate, regardless of success, shall be entitled to necessary fees and expenses. *Dunnuck v. Mosser* (1989), Ind.App., 546 N.E.2d 1291 (quoting *In re Estate of Workman* (1970), 147 Ind.App. 523, 526, 262 N.E.2d 408, 410). This person would be the executor named in the purported will; and, if none is named, then "any devisee therein." *Id.* (quoting *Fickle et al. v. Scampmorte* (1962), 243 Ind. 165, 167, 183 N.E.2d 838, 839).

In *Dunnuck*, the contestant did not submit the previous will to probate but contested the subsequent will in good faith for the purpose of having the prior will submitted. *Dunnuck*, 546 N.E.2d at 1292. There, the trial court did not err when it awarded attorney's fees pursuant to I.C. 29–1–10–14. *Id.*

In the present case, Edwards sought to contest the 1990 will. In the complaint,

Edwards stated that the Plaintiffs were interested in the validity and probate of the 1990 will because they or their ancestors were named as beneficiaries in Velma's prior will of 1974. Edwards attached a copy of the 1974 will to the complaint and incorporated it into the complaint by reference. From these statements and actions, we conclude that Edwards was contesting the 1990 will for the purpose of having the 1974 will, under which they were devisees, submitted to probate. In the alternative, however, Edwards, faced with the possibility he might not prevail on the will contest, also filed a claim against the estate created by the 1990 will and founded that claim on the contract not to revoke the 1974 wills. The parties tried this issue first. Our previous assumption, that, for purposes of the claim against the estate, the 1990 will is assumed valid, does not control here. The trial court stated that, because Edwards' legal action was a "combination of various actions which include a will contest, it is the conclusion of this Court that Plaintiffs, as well as Defendants, would qualify for a recovery of attorney fees under Ind.Code Sec. 29–1–10–14." The trial court did not err.

Judgment affirmed.

HOFFMAN and KIRSCH, JJ., concur.