Filed Nov. 9, 1893.

———————◆———————

No. 16,468.

### Claypool v. Jaqua, Administratrix, et al.

Harmless Error.—*Sustaining Demurrer to Good Paragraph of Pleading.*—*When Harmless.*—Where a demurrer is sustained to a good paragraph of pleading, but the same facts can be proved under another paragraph not demurred to, or to which a demurrer is overruled, no injury can result to the party, and the ruling will be harmless.

Decedent's Estate.—*Widow's $500 Claim.*—*Indefeasible.*—*May be Relinquished.*—*Nature of.*—The widow's claim of $500, as provided by section 2269, R. S. 1881, may be released by her, but the husband can not, by any act of his, deprive her of it against her will. Such claim is not an interest in the estate of the decedent, but is a preferred claim, payable out of the personal estate, if sufficient; if not, then out of the lands also.

Contract.—*Husband and Wife.*—*Antenuptial Agreement.*—*Parol Reduced to Written.*—*When Can Not be Varied.*—Where a husband and wife

entered into a parol antenuptial agreement, and subsequent to their marriage, for the purpose of evidencing and perpetuating such agreement, they reduced it to writing, and there is nothing ambiguous, uncertain or doubtful in or about it, which parol evidence will aid, it will be presumed that the parties intended the agreement to be as written.; the written agreement merged the parol negotiations, and the written agreement not having been questioned during the joint lives of the parties, it will not be modified afterwards.

From the Steuben Circuit Court.

*F. S. Roby,* for appellant.
*W. G. Croxton* and *F. M. Powers,* for appellees.

DAILEY, J.—This was an action brought by the appellee Eliza Jaqua, in her trust capacity, as administratrix of the estate of Seth Jaqua, deceased, against herself, as the surviving widow, and the appellant, Sarah E. Claypool, as the only child and heir at law of the decedent, invoking the probate powers of the court for an order directing the sale of certain real estate of the decedent to pay the debts of the estate.

The pleadings and exhibits, as shown by the record, establish the following facts, beyond controversy, and faithfully tell the story of the case: That the appellee Eliza, prior to January 1, 1887, was a widow, and one Seth Jaqua, a widower, who, anticipating a matrimonial alliance, entered into a parol antenuptial agreement, which was intended to be a settlement of the property rights of each in and to their respective real estate; that they afterwards intermarried, on the 1st day of January, 1887; after their marriage, being on the 9th day of June, 1887, they executed an agreement, in writing, which they therein declare to be in evidence and affirmance of the original parol agreement before marriage, and made for the purpose of perpetuating said agreement, and avoiding the statute of frauds; that said writing was acknowledged before a notary, and recorded; that by said

writing, said Jaqua gave to the appellee herein a vested life estate in the lands, in lieu of her other interest therein, being the lands sought to be sold in this action, and released any and all claims as surviving husband, or otherwise, to certain lands belonging to her, and appellee thereupon released all claims to any and all other real estate of the said Jaqua, present or prospective; that on the 18th day of June, 1890, three years after the written agreement was executed, Seth Jaqua died, intestate, leaving his widow, the appellee Eliza Jaqua, and the appellant, his daughter by a previous marriage, his sole heirs at law; that appellee was duly qualified administratrix, and, in that capacity, at the April term, 1891, of the lower court, filed her petition to sell the real estate therein described, showing that the personal estate of the decedent amounted to $234, appraised value, which she, as surviving widow, had applied and credited on her statutory allowance of $500; that there were debts and claims filed, allowed, and pending against said estate amounting to $240; that there was $266 yet due her as widow, on her statutory claim; that she had a life estate in the lands, and asked to have the lands sold subject to her life estate, to make assets for the payment of the debts of the estate.

The appellant filed a combined answer to this petition, and a cross-complaint against the appellee individually, in three paragraphs, the first setting forth the parol antenuptial contract, alleging that the same concluded the appellee from claiming any part of the personal estate of the decedent; the subsequent written agreement, which, by mistake of the attorney drawing it, did not include their agreement concerning the personal estate, and praying that the written contract be reformed to correspond with the verbal, and that it be enforced against the appellee. The second paragraph is the one upon which the

appellant seems to rely in this appeal, and after admitting the essential averments of the petition, and giving with minute detail, the financial circumstances and domestic surroundings of the deceased and appellee prior to their marriage, and at the time the antenuptial contract was made, and stating that, in giving a life estate in what is shown by the copy of the written agreement, made a part of this paragraph, to contain about twenty-four acres of land, deceased had dealt generously with the appellee, and that, in consideration of his liberal settlement upon her, and his release of any and all claims to her real estate, she released all claims to his personal estate; that after their marriage their agreements were reduced to writing; that the appellee has wrongfully, and in violation of her agreement, appropriated the personal estate of the decedent; that, but for such wrongful act, there would be personal estate ample to pay all the debts of said estate.   It is prayed that appellee be compelled to restore the personal estate, and in her trust capacity account for the same, and apply it to the payment of the debts, and that the lands be not sold as prayed for in the petition.

The written contract referred to is filed with the answer, and is as follows: "This indenture, made and entered into by and between Seth Jaqua and Eliza Jaqua, formerly Eliza Pillsbury, of Steuben county, Indiana, witnesseth, that said parties have respectively been married before this present marriage and have children by their respective former marriage; that they were united in marriage on the 1st day of January, 1887, and prior to such marriage they did enter into an antenuptial agreement in regard to their property verbally; and to make their said agreement perpetual, and to save doubts as to the statute of frauds affecting the same, they do now, as of then, reduce it to writing, to wit:   "That said

Seth Jaqua assigns, releases and transfers to said Eliza Jaqua, to have and to hold during her natural life, the following real estate in Steuben county, in the State of Indiana, to wit:'' [Description of land same as in complaint, and order of sale.] ''For and in consideration of one dollar, love and affection, and the further consideration that the said Eliza Jaqua hereby relinquishes and releases unto the said Seth Jaqua all her right, title and interest in and to the other and different real estate, present or future, that the said Seth Jaqua may acquire or be seized of, at the time of his death. And the said Seth Jaqua, in consideration aforesaid, relinquishes and releases unto Eliza Jaqua, any and all interest he might have as heir as husband, in case of her death before him, in and to the land owned by her in York township, acquired by her former marriage with Oliver Pillsbury. In witness whereof the said parties have hereunto set their hands and seals this 9th day of June, 1887.

[Signed] ''SETH JAQUA.

''ELIZA JAQUA.— mark.''

The third paragraph is the same, in all its essential averments, as the second. The appellee, as administratrix, and individually, demurred separately to each paragraph severally, of the appellant's answer and cross-complaint.

The court overruled the separate demurrer of the appellee individually, to the first paragraph, and sustained the same to the second paragraph, to which the appellant excepted.

The alleged error of the court, in the second ruling, forms the basis of the appeal. Owing to inadvertence or oversight of the trial court, or want of attention on the part of counsel, the court failed to enter a ruling upon the demurrers to the third paragraph of the answer, but this fact needs no consideration here, the demurrer be-

ing waived by proceeding to trial without a ruling thereon. The record, also, fails to show any reply filed by the appellee, but this is likewise waived.

Upon the hearing of the cause, the court granted the prayer of the appellee's petition, and ordered the land sold at public sale, subject to the life estate of appellee. Appellant excepted, and appeals from this order directing the sale of said land.

The errors assigned are as follows:

1st. The court erred in sustaining the demurrer of Eliza Jaqua, administratrix, to the second paragraph of the separate answer of Sarah E. Claypool.

2d. The court erred in sustaining the demurrer of the defendant, Eliza Jaqua, to the cross-complaint of Sarah E. Claypool.

3d. The court erred in its order for the sale of the real estate therein described.

It will be seen that the appellant challenges the correctness of the ruling of the trial court upon the appellee's personal demurrer to the second paragraph of the cross-complaint, and the sustaining of the demurrer to that paragraph, is the appellant's complaint, and appeal to this court.

It is manifest from the rulings of the lower court upon the two separate demurrers directed to this second paragraph of appellant's answer and cross-complaint, that no injury did or could result therefrom, as it was sustained to it, in the one instance as a cross-complaint and overruled to it as an answer, and was thus left unimpaired before the court on the trial of the cause. Then, again, the same issue was raised, the same facts pleaded, and the same relief demanded substantially in the third paragraph, which was allowed to remain unquestioned below, and no wrong could result to appellant from this ruling. The ruling upon demurrer, although erroneous, will not

reverse the case if the ruling does not affect the substantial rights of the party.

Where a demurrer is sustained to a good paragraph of pleading, but the same facts can be proved under another paragraph not demurred to, or to which a demurrer is overruled, no damage can result to the party, and the ruling will be harmless. *Smith* v. *Denman*, 48 Ind. 65 (69); 1 Works Pr. & Pl., section 537, and cases there cited.

We think the same facts could have been proven under the first and third paragraphs. *Houghton* v. *Houghton, Admr.*, 14 Ind. 505.

Counsel on both sides rightly assume the validity of the written instrument, and that a written ratification, after marriage, of an antenuptial contract, such as in this case, is valid, and enforceable between the parties and those claiming under them. 8 Amer. and Eng. Ency. of Law, 684; *McAnnulty* v. *McAnnulty*, 120 Ill. 26.

It is conceded, by all parties concerned, that the appellee could, by agreement made before marriage, release and relinquish all her prospective property rights, and bar her statutory claim, as widow, in the property of the decedent. 1 Sharswood's Blackstone, 442, note 28; *Houghton* v. *Houghton, Admr., supra.*

Also, that the claim of the widow of a decedent to the $500, for which provision is made by section 2269, R. S. 1881, may be released and relinquished by her election to take under an inconsistent testamentary provision. *Langley* v. *Mayhew*, 107 Ind. 198; *Hurley, Admr.*, v. *McIver*, 119 Ind. 53 (55).

Is the case at bar within the operation of any of these rules? We think, clearly not. The widow's statutory claim to $500 is not an interest in the estate of the decedent, but is a preferred claim payable out of the personal estate, if sufficient for the purpose. If not, then the lands of the decedent shall be sold to pay it.

"The widow's right to this allowance of $500 is, in some of its incidents, analogous to the right of dower. The husband can not, by any act, deprive her of it against her will, and she may * * * take it, and in addition take that which the will gives." *Shipman* v. *Keys, Admr.*, 127 Ind. 353 (356).

The antenuptial agreement, in this instance, is plain, direct, precise, definite, full and complete in all its terms. There is nothing ambiguous, uncertain or doubtful in or about it, or which parol evidence could aid; they specially and specifically restricted it to their real estate, and omitted to say anything concerning their personal property. It is presumed that the parties intended to do just what they did. This contract not only limits the agreement to the real estate, but it expresses the terms of a previous parol contract. It stood unquestioned during the lifetime of the decedent, and we can not question it now, since death has sealed the lips of one of the parties, and the law seals the lips of the other. We can not enlarge the express contract between the husband and wife so as to make it speak in language different from what they employed in their deliberate moments. It must speak for them.

The written instrument, as the authorities agree, merges mere oral negotiations, expresses the matured agreement of the parties, and supplies the best evidence upon the subject of property rights. If the parties put in writing their agreement concerning property, and subsequently marry, the agreement, as written, is the source of evidence, and furnishes conclusive proof of the matured and final contract.

The court did not err in making the order complained of.

Judgment affirmed.

Filed Nov. 22, 1893.