IN THE MATTER OF THE ESTATE OF PHLIPO, DECEASED
ET AL. *v.* MERCHANTILE NATIONAL BANK,
EXECUTOR, ETC., ET AL.

[No. 18,404. Filed March 24, 1953.]

*Forrest H. Gantenbein,* of Hammond, for appellants.

*Tinkham, Beckman & Kelly,* of Hammond, for appellees.

CRUMPACKER, J.—Julia Ann Phlipo, hereinafter called the decedent, died February 25, 1951, a resident of Lake County, Indiana, and the owner of certain real estate therein situated. During her lifetime she made application to the County Department of Public Wel-

fare of Lake County for old age assistance under the provision of the Public Welfare Act of 1936, as amended. Her application was granted and the award made by the department was entered upon a certificate which was filed in the office of the recorder of Lake County on May 1, 1947. Virgil J. Huber, hereinafter called the appellee, was the owner and holder of a promissory note executed by the decedent in her lifetime and before her death he sued to collect the same and obtained judgment in the sum of $601.29 on May 19, 1950. Upon the decedent's death the appellants, County and State Departments of Public Welfare, filed a claim against her estate by which they sought reimbursement for money spent in support and care of the decedent from May 1, 1947, until the date of her death on February 25, 1951. This claim was allowed by the executor of the decedent's will in the sum of $3,368.35. The appellee also filed his judgment as a claim against said estate and the same was allowed in the sum of $601.29. These claims, together with costs of administration, etc., rendered the estate insolvent and the executor was directed to settle the same as such and in the course of doing so the decedent's real estate was sold free of the liens of the appellants' certificate of old age assistance and the appellee's judgment and the same were transferred to the funds derived from the sale. A controversy as to the priority of these liens thereupon arose which the court resolved by a judgment fixing the manner in which funds in the hands of the executor should be distributed as follows:

"1.  Administrative costs;
"2.  Funeral expenses not to exceed $125.00;
"3.  That part of claim of Lake County Department of Public Welfare which accrued from date of rendering benefits to the deceased to and including

the date upon which the lien of Virgil J. Huber attached, which was May 19, 1950.

"4. The lien of Virgil J. Huber dated May 19, 1950;

"5. The balance of the claim of the Lake County Department of Public Welfare that accrued from May 19, 1950 to the time of filing its claims; . . ."

The appellants assert that said judgment is contrary to law in that it gives priority to their lien over that of the appellee only to the extent of money spent for the decedent's benefit prior to the time the appellee obtained his judgment. They say that when the County Department of Public Welfare awarded assistance to the decedent and a certificate thereof was filed in the recorder's office on May 1, 1947, they acquired a continuing lien on the decedent's real estate for all money expended by them in discharge of said award from that date forward and that such lien is superior to any lien subsequently acquired by another even though a part of the assistance rendered to the decedent was furnished after such subsequent lien attached to her real estate. On the other hand the appellee contends that no one can acquire a lien on another's property until the funds which give rise to the lien have been advanced or, to state it another way, until the debt which is the basis of the lien has actually come into existence. Therefore, the appellee insists, the appellants' lien securing that part of the decedent's debt which came into existence after the date of his judgment is junior and inferior thereto.

The appellee's position in this respect might have merit, we think, if the operation of a lien were limited to securing the payment of a debt, as the word is used in its strictest sense. However it has been held that a lien may secure not only a "debt" but also a duty or other obligation. 53 C. J. S., Liens, §9,

*Hurley* v. *Boston Railroad Holding Co.* (1944), 315 Mass. 591, 54 N. E. 2d 183. The decedent sought and obtained old age assistance through the County Department of Public Welfare of Lake County and, the whole proceeding being statutory, we therefore look to the appropriate statute to determine the obligation she thereby assumed. The statute involved is §52-1207, Burns' 1951 Replacement, which reads as follows:

"When assistance is granted to any aged person under the provisions of Part 3 of this act, the award so made, designating the name and residence of the recipient, the amount of the award, the date when the assistance to the recipient is to begin, and such other facts as the state board shall prescribe, shall be entered on a certificate, the form of which shall be prescribed by the state board. Four (4) copies of such certificate shall be prepared, each certificate shall bear the impress of the seal of the department, and one (1) copy thereof shall be retained by and filed in the office of the county department, one (1) copy shall be filed with the state department, one (1) copy shall be filed in the office of the county recorder, and one (1) copy shall be given to the recipient. From the date on which such certificate is filed in the office of the county recorder, it shall be and constitute due notice of a lien against the recipient and his estate for any amounts recoverable under this act, and shall give a specific lien in favor of the state and county departments against the real property of the recipient, which lien shall continue from the date of the filing of such notice, until such lien is satisfied, and which lien shall take priority over any other lien subsequently acquired."

It seems clear to us that the Welfare Act of 1936, as amended, creates an obligation on the part of the estate of any recipient of old age assistance to reimburse the State and County Departments of Public Welfare for monetary benefits such recipient received during life and that the lien created by the above statute

was intended by the legislature to secure the performance of such obligation in its entirety and the priority of said lien cannot be ousted until it is satisfied by such performance.

It must be conceded that the priority of statutory liens is determined by the statutes creating them. The legislature has the undoubted power to specify circumstances under which a lien shall come into existence and to give such lien priority over all others except those already existing when the act was passed. 53 C. J. S., Liens, §10 and cases cited. The statute in question does exactly that. The appellee's lien is not only subsequent to the enactment of the statute but it also came into existence after that of the appellants. When the appellants filed a certificate, showing an award of old age assistance to the decedent, in the office of the recorder of Lake County they gave notice to the world that they held a lien on her real estate to secure reimbursement from her estate for all money which might be paid to her by virtue of such award. The continuity of that lien, being to secure the performance of an obligation, could not be interrupted by the appellee's judgment and the court erred in holding that it was.

The appellee calls our attention to certain defects in the appellants' brief and by reason thereof seeks an affirmance of the judgment without consideration of this appeal on its merits. We have had no difficulty, without resort to the transcript, in ascertaining the exact question the appellants seek to present and the position of all parties in respect thereto. The question is one of first impression and its importance justifies a decision on the merits.

As the facts in this case are undisputed there seems no need for a new trial and therefore the cause is re-

manded with instructions to the court to modify its judgment in conformity with the views expressed herein.

NOTE.—Reported in 111 N. E. 2d 93.