ELKHART COUNTY DEPARTMENT OF PUBLIC WELFARE *v.* KEHR, ADMINISTRATOR OF ESTATE OF KEHR, DECEASED.

[No. 18,387.   Filed May 19, 1953.   Rehearing denied June 16, 1953.   Transfer denied February 24, 1954.]

*Harry E. Vernon,* of Goshen, for appellant.

*Philip C. Barker,* of Goshen, for appellee.

KENDALL, J.—The sole question presented by this appeal is whether or not the widow's statutory allowance, as provided by §6-711, Burns' 1951 (Supp.), Acts of 1881 as amended by Acts of 1949, ch. 52, p. 155, §1, constitutes a prior and preferred claim to that of a welfare lien on real estate created by §§52-1213 and 52-1214, Burns' 1951 Replacement.

Appellee's decedent, John F. Kehr, died in Elkhart County, Indiana, March 6, 1951, leaving surviving him, among other heirs, his widow, Dora Kehr, who had been his wife for more than twenty years. The assets of the estate were insufficient to pay the widow's statutory allowance, costs of administration and appellant's claim. The appellant's claim number one was filed asking for reimbursement for old-age assistance advanced by the appellant's Department to the decedent during his lifetime from May 1, 1947, to May, 1950, in the sum of $2,589.10. There was also a claim filed by one Henry S. Weaver for $736.00 as a result of a judgment thereto-

fore rendered. Said judgment creditor is not taking part in this appeal.

The lower court rendered judgment in favor of appellee to the effect that the widow's claim for her $1,000.00 statutory allowance had priority over that of the Elkhart County Department of Public Welfare for amounts advanced as old-age assistance, which the court held had second priority; the court further held that the judgment of the creditor, Henry S. Weaver, had third priority.

The appellant filed motion for new trial, which was overruled, and, for the purpose of this appeal, has assigned as errors as follows:

1. The court erred in overruling appellant's motion for new trial.
2. The court erred in its finding, decision and order that the claim of the widow for her statutory allowance had priority over the lien of appellant.

The appellant's claim was filed pursuant to §52-1214, *supra*, which is as follows:

"Claim against estate—Certain priority—Real estate occupied by surviving spouse.—Upon the death of any person who is a recipient of aged assistance, a claim shall be filed against his estate by the county department of public welfare for recovery of all assistance paid to or on behalf of such person from and after May 1, 1947. Such claim shall be for all amounts paid by any county beginning with any payment made on May 1, 1947 or thereafter and shall be on behalf of the state department and any county department which has paid assistance to said recipient. Any claim filed for recovery of aged assistance shall have priority in order of payment from the estate over all other claims, except prior recorded encumbrances, taxes, reasonable costs of administration, and funeral expenses in an amount not to exceed $125.00. If the real estate of a deceased recipient is occupied by a surviving husband or wife, the department of public welfare shall not assert its lien or claim during

the lifetime of said surviving spouse unless other claimants or persons have opened an estate and are attempting to enforce their claims in which case the department shall file and assert the claim for recovery of old age assistance."

There was a stipulation between the parties that the assets of the estate of John F. Kehr, applicant for assistance, were not sufficient to satisfy the claim of the parties hereto; that the estate had been adjudicated as insolvent; that decedent and his now widow, Dora Kehr, had lived together for more than twenty years; that said widow was the wife of the decedent at the time of his making application for old-age assistance but did not join him in executing the application or agreements pertaining thereto; that on May 31, 1951, the Elkhart County Department of Public Welfare filed claim for reimbursement for $2,589.10 for old-age assistance rendered to the decedent under the terms of the welfare act, being §52-1214, *supra,* and a contract executed by the decedent in said department.

The appellant contends that by the execution of the application for old-age assistance as prescribed in §52-1213, *supra,* that the agreement so executed takes priority over any other lien subsequently imposed. Also, that the lien in favor of appellant's Department became the lien in the same manner as if the recipient had executed a mortgage. This question is of first impression to this state. It is necessary to determine whether or not the Legislature, by the enactment of §§52-1213 and 52-1214, *supra,* so intended the Welfare Act to constitute a lien on applicant's real estate so as to have priority over the widow's statutory allowance, being §6-711, *supra.*

The rights given a widow in §6-711, *supra,* are in the nature of a preferred charge imposed by law upon the

estate and constitutes such a right that it is not necessary for the widow to file a claim against the estate to compel payment therefor. *Rush* v. *Kelley* (1905), 34 Ind. App. 449, 73 N. E. 130, at p. 454. Sec. 52-1214, *supra,* does however provide that any claim in behalf of the Welfare Department filed for recovery of assistance should have priority in order of payment from the estate over all other claims. We do not believe that section of the statute is applicable to the widow's statutory allowance on account of its being a preferred charge for which the widow does not have to file claim.

In the case of *Claypool* v. *Jaqua, Administratrix, et al.* (1893), 135 Ind. 499, 35 N. E. 285, the court said:

> "The widow's right to this allowance of $500 is, in some of its incidents, analogous to the right of dower. The husband can not, by any act, deprive her of it against her will, and she may . . . take it, and in addition take that which the will gives." (See also Rush v. Kelley (1905), 34 Ind. App. 449.)

Our courts have also held that the widow's statutory allowance is such a preferred charge against the decedent's estate that even if the widow should die before payment that its payment may be enforced by her executor or administrator against the estate of her husband. *Bratney, Administrator* v. *Curry, Executor* (1870), 33 Ind. 399, *Pierce, Ex.,* v. *Pierce, Adm.* (1898), 21 Ind. App. 184, 51 N. E. 954.

The appellant cites the case of *Dixon, Sheriff, et al.* v. *Aldrich, et al.* (1891), 127 Ind. 296, 26 N. E. 843. There the court held the right of the widow to her $500 statutory allowance to have precedence over a levy by the sheriff of an execution on the property of a husband during his lifetime and further held that the Legislature intended in all cases to secure the widow her statutory allowance except when the husband in his lifetime had

divested himself of ownership or in some manner encumbered the title so as to destroy the right of exemption. We do not have such facts before us in the case now under consideration. We believe the case of Dixon, Sheriff, *supra,* is strongly persuasive of justice and the intention of the Legislature for in it the court said:

> "The statute which gives the widow the right to Five hundred dollars is clear and comprehensive, and it expresses the intention of the Legislature to give her that sum out of property of which her husband died the owner and which he might, if living, have exempted from sale on execution."

There is no information in the case just cited as to whether or not the property upon which execution was levied was real or personal. The sole question in the case immediately cited was whether or not a widow could secure the $500 statutory allowance (amended 1949) where the property of her deceased husband was held under a levy made by the sheriff before the husband's death. The court answered that question in the affirmative and stated:

> "The levy did not change the title to the property, that still remained in the husband. He was the owner notwithstanding the levy, and he might have successfully claimed an equal amount in value to Six hundred dollars as exempt from execution."

The Legislature by the enactment of §6-711, *supra,* provided in part, "The deficit shall constitute a lien upon the real estate of the decedent liable to sale for the payment of debts which liens may be enforced." The Act further provides, ". . . and shall be superior to the lien of judgments upon said real estate rendered against said decedent." Certainly it was the intention, therefore, of the Legislature to secure such widow, regardless of her station in life, the allow-

ance as therein provided if there remained that amount over and above the administration expenses, expenses of last sickness and funeral expense. We believe that §6-711, *supra,* is a declaration by the Legislature that the interest of society would be best served by providing for the widows to the amount of such allowance than for the creditors of said decedent.

It was held, back as early as 1843 when the widow's statutory allowance was $150.00, that the widow might take the widow's allowance without reference to the debts or expenses of administration. *Hays* v. *Buffington* (1850), 2 Ind. 369.

We do not believe it was the intention of the Legislature, when enacting the Welfare Acts, to hold that the "welfare lien" would be prior to the widow's statutory allowance and thus deprive a widow of that allowance which the law had recognized as a preferred charge upon the estate of her deceased husband to provide her with the necessities of life until she had an opportunity to adjust herself to her new situation and as a substitute for the lost earnings of her husband during the settlement of the estate. If the Legislature had so-intended they no doubt would have provided.

The primary purpose of reinstating the "lien law" in 1947 was for the prime purpose of providing a means or method for reimbursing the Welfare agency as a department of government for funds expended for old-age assistance if the decedent left property at his death after compliance with the provisions of the statute as to payment of administration expense, last illness and funeral expense and to prohibit recipients from securing assistance at the expense of government when they had members of their own family capable and financially able to support them. The Legislature undoubtedly did not approve of granting assistance to recipients when members of their own fam-

ily were able to pay and did not and then to permit them to secure the benefits of inheritance by claiming the property of the recipient after death. The primary purpose of the court is to render justice. We believe it ' would be unfair and unjust and contrary to the long-established policy of the state to permit the Welfare Department as an agency of government to place its claim ahead of the widow's statutory allowance and that to so hold would be contrary to public policy.

The appellants contend that the welfare lien provision has the same effect as a mortgage. In the instant case, however, the widow did not sign the agreement by which appellant claims the real estate was encumbered. Neither was the agreement executed by decedent notarized and neither did it contain a description of the real estate. The court is of the opinion that the appellant's contention in this connection is without merit.

Sec. 2-3514, Burns' 1946 Replacement, provides as follows:

> "WHEN HUSBAND'S MORTGAGE OF REALTY INVALID—No mortgage or sale of any real estate exempted under the provisions of this act shall be valid if executed by a married man, unless the mortgage or deed be signed and acknowledged by the wife in due form of law. Acts 1879 (Spec. Sess.) ch. 50, §13, p. 127."

The only conclusion therefore to be drawn by this court is that the decedent did not so divest himself of ownership or so encumber the title to the real estate then owned by him as to destroy the right of his widow to the preferred charge upon the estate in her favor which the law gives her. We find nothing from which it can be said or an inference drawn that the widow waives any right to claim her statutory widow's allowance.

From a close analysis of the statutes under consideration, it appears that they are doubtless in irreconcilable conflict. We do not believe that the Legislature, in creating the lien in favor of the Department of Public Welfare, intended to create a lien having the characteristics of a mortgage.

In the case of *Cox* v. *Timm* (1914), 182 Ind. 7, 105 N. E. 479, the court announced the rule in the construction of conflicting statutes to be as follows:

"And as this construction brings about provisions in the law which are in the particular under construction conflicting in effect, one of them (provision in the law) must give way to save the law from the objection of lack of uniform operation. In such case, if the conflict is irreconcilable, the intention embodied in the provision latest in the law, and therefore last in order of time, is deemed to prevail."

Construing the statutes discussed herein on the basis of the principle announced in the case of *Cox* v. *Timm, supra,* we can only reach the conclusion that the widow's allowance, as reinacted by the Legislature in 1949, must prevail over the claim of the Welfare Department under the welfare acts of 1947 which deal with the same subject matter.

Notwithstanding the fact that the creditor in this case is an agency of government created by Legislature to provide for the unfortunate, we believe that §6-711, *supra,* is a concise and definite statement which has declared for more than one hundred years that society can be best provided for by granting to widows a preferred allowance save costs of administration, last illness and funeral expenses. The appellant's remedy to correct this situation lies with the Legislature.

Finding no error, judgment affirmed.

Kelley, J., concurs in result with opinion.

Crumpacker, P. J., dissents with opinion.

Achor, J., concurs in dissent.

### CONCURRING IN RESULT

KELLEY, J.—I arrive at the same conclusion as the majority opinion but by different paths.

The record in this appeal is woefully deficient in matters essential to a proper determination of the questions involved. The judgment of the court is based wholly on a stipulation entered into by certain named parties, one being the appellant herein and another being the administrator of decedent's estate, who purported to act on behalf of the widow of decedent. The widow, herself, did not join in the stipulation.

The stipulation undertakes to establish, in substance, the following facts: Decedent died March 6, 1951 (it is not stipulated that he died intestate but it may be fairly inferred that such was the fact) ; the estate is insolvent and assets insufficient to satisfy the various claims of the parties; that Dora Kehr, the widow, did not join in decedent's application for old age assistance; that petition to settle the estate as insolvent was filed June 3, 1951 and notice thereof duly published on June 15, 1951; that the claim of appellant was filed May 31, 1951, as Claim No. 1, for $2,589.10 based upon old age assistance rendered under the terms of a certain contract between decedent and appellant, a copy of which said contract is set forth; that notice of the old age assistance was filed in the Recorder's Office of Elkhart County on May 1, 1947; that decedent died the owner of certain described real estate; and that one Henry S. Weaver has a claim, designated as Claim No. 2, based on a judgment in his favor taken against the de-

cedent in the latter's lifetime. The stipulation was filed in the court on July 3, 1952.

It makes no reference to any sale of the real estate but it appears from another part of the record that the administrator published notice of the time, place and terms of sale of the real estate on August 21st and 28th, 1951, and made a report of private sale to a named purchaser for $1,900.00 in cash, which sale was confirmed by the court and deed approved and ordered delivered. Nothing appears in the record as to the proceedings for the sale, whether adversary in character, who, if any, were made parties thereto, or whether the interest of the widow therein was set off to her or was sold with order of attachment to the proceeds of the sale.

The record is devoid of any reference to what the assets of decedent consisted of, that is, what part was personalty, cash, and real estate. This is important because, under the statute, the widow may select articles not exceeding $1,000.00, or, if she fails to select, she becomes entitled to her allowance out of the first moneys received by the administrator in excess of administration costs, and expenses of last sickness and funeral. See §6-711, Burns' 1933.

It is noted that the inheritance tax appraiser made an appraisement of the estate in the *net* sum of $3,325.23. The real estate sold for $1,900.00, thus indicating a personal estate of $1,425.23. If such be the fact, then all or some part of the widow's allowance could or may have been paid out of the personalty as provided by the statute, but the record fails to disclose anything as to these facts. It may be urged that such matters are of no influence in the determination of this appeal, as we have only to look to the stipulation and the judgment of the court as the basis for our consideration. I do not agree with this conclusion.

The majority opinion is predicated wholly upon a determination of the priority of liens, the lien of the widow and the lien of the appellant. But the judgment of the court, from which this appeal is taken makes no reference to priority of *liens*. It establishes priority of *claims*. Upon the record presented here, the court could not have adjudged the priority of *liens*, and this for the good reason that circumstances and facts necessary under the statute for the creation of any widow's *lien* are not shown. The statute provides when and how the widow's allowance becomes a *lien* but none of such essentials or requisites are shown in the stipulation or in the record presented to us. Nor does the court, in its judgment or order of priority, make any reference or order that the widow's *claim* for allowance attaches to the real estate or the proceeds thereof. It simply orders the administrator to "settle said claims in accordance with said priorities."

Such being the condition of the record, there is a total absence of any submitted ground for the determination of this appeal on the basis of comparative priorities of *liens*.

The real question, then, for our consideration on this record before us, is one of priorities of *claims*. The statute, §52-1213, Burns' 1951 Replacement, in creating a *lien* in favor of the Welfare Department, refers only to "real property" of the recipient. It has no application to personalty. However, §52-1214, of the Burns' Replacement, provides that "any claim filed for recovery of aged assistance shall have *priority in order of payment* from the estate over *all other claims,* except prior recorded encumbrances, taxes, reasonable costs of administration, and funeral expenses in an amount not to exceed $125.00." (Our emphasis.)

It is evident, therefore, that if the widow possesses only a *claim* against the estate of the decedent, then,

under the quoted provision of the statute, the claim of the appellant would seem to have priority. It has been the holding of our courts that, under the statute, §6-711, Burns' 1933, the widow has a "preferred" claim, payable out of the personal estate if it is sufficient for that purpose; and, if the personalty is insufficient therefor, the real estate can be sold to pay her. *Claypool* v. *Jaqua, Administratrix, et al.* (1893), 135 Ind. 499, 505, 35 N. E. 285; *Mugg* v. *Fenn* (1926), 198 Ind. 372, 374, 153 N. E. 776. "The husband can not, *by any act,* deprive her of it against her will . . . ." *Shipman* v. *Keyes, Administrator* (1890), 127 Ind. 353, 356, 26 N. E. 896. (Our emphasis.) "The statutory allowance to the widow of $500.00 (now $1,000.00) *was not an interest in the estate of the decedent* . . . ." (Our emphasis.) *Mugg* v. *Fenn, supra,* and "Her right to such payment was not a *'claim* against the decedent' *to be filed by her* as provided in . . . ." (Our emphasis.) *Rush, Administrator, et al.* v. *Kelley* (1905), 34 Ind. App. 449, 454, 73 N. E. 130. The widow's right to her statutory allowance is "analogous to the right of dower . . . ." *Shipman* v. *Keyes, Administrator, supra, Claypool* v. *Jaqua, Administratrix, et al., supra.*

Thus, from the authorities, it seems that the statutory allowance given the widow of a decedent, although sometimes referred to as a "preferred claim," is not just a claim of commensurate value and standing in the sense of being a claim arising from some obligation of the decedent which must be filed against the estate for allowance, but it partakes of the nature of a *prior* right vested in her by virtue of statutory authorization.

This allowance made to the widow is one especially favored by the law. There has been a constant tendency to make a better provision for her. The amount allowed to her has been increased from one hundred dollars to five hundred dollars and, by ch. 53 of the Acts of 1949,

to one thousand dollars. "It gives her a credit for the necessaries of life at once upon her husband's death, and the means of decent burial should she die before the amount comes into her hands. The statute requires a liberal, instead of a narrow, interpretation, in order to accomplish the purposes of the legislature in enacting it. . . . The right and *title* of the widow to this allowance, either in property or money at her election, vests in her and *becomes absolute* immediately on the death of the husband. The . . . allowance made to a widow . . . becomes her *absolute property*. . . . The amount allowed the widow by this statute, when taken by her, either in property or money, *must be considered* as so much *deducted* from the *assets* in the hands of the executor or administrator, *without reference to the debts* of the estate . . . ." (Our emphasis.) *Henry's Probate Law and Practice,* Fifth edition, Vol. 1, pp. 214, 215, 216, §197.

It is my opinion, therefore, that the wording of the statute, §52-1214, Burns' 1951 Replacement, in giving priority to the claim of the public welfare department, "in order of payment" from the estate over "all other claims" gives no priority over the widow's statutory allowance for the reasons: (1) that her allowance is not merely a "claim," and, (2) that the word "claims," as used in the statute, refers to claims as used in the ordinary understanding of that word and does not include or refer to the statutory provision for the widow of a sum certain.

The trial court reached the right result and the judgment should be affirmed.

## DISSENTING OPINION

CRUMPACKER, J.—It seems to me that the court has indulged in the questionable practice of judicial legislation in reaching its decision.

Sometime prior to May 1, 1947, John F. Kehr, an aged person, married and living with his wife, applied to the appellant for financial assistance and in due course an award was made whereby said applicant received, in monthly installments from May 1, 1947, to May 1, 1950, the aggregate sum of $2,589.10. The terms of this award were entered upon a certificate which was filed in the office of the recorder of Elkhart County on May 1, 1947, thereby giving "due notice of a lien against the recipient and his estate for any amounts recoverable under this act" and creating "a specific lien in favor of the state and county (welfare) departments against the real property of the recipient, which lien shall continue from the date of the filing of such notice, until such lien is satisfied, and such lien shall take priority over any other lien subsequently acquired." Sec. 51-1207, Burns' 1951 Replacement.

John F. Kehr died on March 6, 1951, leaving surviving his widow Dora Kehr, who had been his wife for many years but who did not join in his application for old age assistance and made no agreement with the appellant in respect thereto. His estate was adjudged insolvent and in the course of the administration thereof the court declared that, after costs of administration, last sickness and burial, the widow's statutory allowance of $1,000 should be paid first and the appellant's lien discharged second. I believe that this is error.

The statute pertaining to a widow's allowance is §6-711 Burns' 1933. It was enacted in its present form in 1881 and, except for the amount of the allowance, has remained unchanged to this day. It provides as follows:

"The widow of the decedent, whether he die testate or intestate, may at any time before the sale, select and take articles therein named at the appraisement, not exceeding in the aggregate, one thousand dollars ($1,000). Each article taken by

her shall be so noted on the inventory opposite the article taken, or a separate inventory may be made of the articles so taken and returned with the general inventory. She shall execute a receipt therefor to the executor or administrator, which shall be returned and filed with the inventory. If the widow fail or refuse to select and take all or any part of the articles in this section provided, she shall be entitled to the amount of the deficiency in cash, out of the first moneys received by the executor or administrator, in excess of the amount necessary to pay the expenses of administration, and of the last sickness and funeral of the deceased: Provided, That if the estate be clearly solvent, she shall be entitled to such payment out of the first moneys received by such executor or administrator. If the personal estate of the decedent be insufficient to pay the amount that may be due the widow in cash, as aforesaid, the deficit shall constitute a lien upon the real estate of the decedent liable to sale for the payment of debts, which lien may be enforced upon the petition of the executor or administrator in like manner as lands of the decedent are sold for the payment of debts, and shall be superior to the lien of judgments upon said real estate rendered against the decedent."

This statute has been held to vest in the widow no interest in the decedent's estate but merely gives her a preferred claim payable out of personalty, if sufficient, and if insufficient then the balance becomes a lien on the decedent's lands which shall be sold to pay it. *Claypool* v. *Jaqua, Administratrix* (1893), 135 Ind. 499, 35 N. E. 285; *In re Mertes Estate* (1914), 181 Ind. 478, 104 N. E. 753; *Rush* v. *Kelley* (1905), 34 Ind. App. 449, 73 N. E. 130. In 1947 the legislature, with full knowledge of the law concerning the priority of a widow's claim for her statutory allowance, enacted §52-1214 Burns' 1951 Replacement which provides that: "Any claim filed for recovery of aged assistance shall have priority in order of payment from the estate over all other claims, except prior recorded encumbrances,

taxes, reasonable costs of administration, and funeral expenses in an amount not to exceed $125.00." Significantly the widow's claim for her statutory allowance is not excepted. That the legislature had the widow's interests in mind but nevertheless intended that the welfare claim should have priority, is evidenced by the following provisions of the same statute: "If the real estate of a deceased recipient is occupied by a surviving husband or wife, the Department of Public Welfare shall not assert its lien or claim during the lifetime of said surviving spouse unless other claimants or persons have opened an estate and are attempting to enforce their claims in which case the department shall file and assert the claim for recovery of old age assistance." As this court recently said: "It must be conceded that the priority of statutory liens is determined by the statutes creating them. The legislature has the undoubted power to specify circumstances under which a lien shall come into existence and to give such lien priority over all others excepting those existing when the act was passed." *Phlipo's Estate* v. *Mercantile Nat. Bank of Hammond* (1953), Ind. App., 111 N. E. 2d 93, 53 C. J. S. Liens §10, cases cited. The widow's allowance statute creates a lien on a decedent's real estate only if his personal estate is insufficient to pay it, in which event the deficiency becomes a lien on his real estate "superior to the liens of judgments upon said real estate rendered against the decedent." Sec. 6-711, *supra*. The welfare lien is not a judgment lien and as the act which creates it gives it preference over all other liens subsequently acquired I cannot escape the conclusion that it is superior to that of a widow's claim for statutory allowance which necessarily came into existence subsequent to an award to her decedent for old age assistance. The two claims clash only when it is necessary to pay them both out of real estate which

is insufficient for the purpose. In that event the legislature has clearly given preference to that of the Department of Public Welfare.

The court seems to have relied somewhat upon the principle that when two statutes are in irreconcilable conflict, the last one in order of time is deemed to prevail. To bring this doctrine into play it treats the widow's allowance statute of 1881 as having been re-enacted in 1949. It doesn't seem to me that such is the fact. The act of 1949 to which the court refers merely amended the widow's allowance statute, as its title indicates, by substituting the words "one thousand dollars" for the words "five hundred dollars" and in point of time the welfare act remains the legislature's latest expression on the subject of priority of liens.

I am in entire sympathy with the result reached by the court but believe its decision invades the province of the legislature and I would therefore reverse.

Achor, J., concurs in dissent.

NOTE.—Reported in 112 N. E. 2d 451.