Louis L. KITCHEN, Appellant (Claimant Below),

v.

ESTATE OF Herbert E. BLUE, Appellee (Defendant Below),

v.

Emma Blanche BLUE; Donald E. Thwaits and Beverly Jean Thwaits, husband and wife; and Grace Bible Church of Syracuse Indiana, Inc., Appellees (Third-Party Defendants Below).

No. 3–1285 A 366.

Court of Appeals of Indiana, Third District.

Oct. 6, 1986.

John William Davis, Jr., Goshen, for appellant.

R. Gordon Lord, Craig M. Buche, Yoder, Ainlay, Ulmer & Buckingham, Goshen, for appellee Emma Blanche Blue.

HOFFMAN, Judge.

This appeal stems from Louis Kitchen's claim against the estate of Herbert E. Blue. Emma Blanche Blue, the Thwaits and the Grace Bible Church of Syracuse Indiana, Inc., are third-party defendants. Louis Kitchen is appealing a partially favorable judgment and Blanche Blue cross-appeals. The following chronology is primarily taken from the trial court's "Modified Revised Findings of Fact and Conclusions of Law."

In 1932 Louis Kitchen's (Louis) mother, Mary Blue (Mary), married Herbert Blue (Herbert). It was a second marriage for both. Louis, then twelve years old, lived with them.

In 1933 Mary's father died and she inherited, as tenant in common with her brothers and sisters, an undivided one-fifth of a farm (Tract C). On February 3, 1936, Herbert and Mary bought additional farmland, Tract A, for $2,500.00 and simultaneously executed a $1,500.00 mortgage to a third party.

On April 17, 1936, Herbert and Mary executed the following will:

"JOINT AND MUTUAL LAST WILL AND TESTAMENT of HERBERT E. BLUE AND MARY BLUE.

We, Herbert E. Blue and Mary Blue, husband and wife, both being of sound and disposing mind and memory, do hereby make and publish this our joint and mutual Last Will and Testament, hereby revoking and making null and void all former last wills and testaments by either of us heretofore made; it being expressly stipulated that each joins in this will and testament, in consideration of the other so joining herein, and each is bound hereby as to the disposition of the property herein described and designated, and disposed of.

Item No. 1. It is our mutual will and each of us hereby directs that all our just debts, funeral expenses and expenses of our last sicknesses, of each of us, shall be first paid out of our estate, as soon after the decease of each of us, as the same can conveniently be done.

Item No. 2. I Herbert E. Blue, for and in consideration of the provisions hereinafter made by my wife Mary Blue, hereby give, devise and bequeath to my said wife, should she survive me, all of my property, in fee-simple, and without any restrictions or qualifications. Should my said wife, however, not survive me, I hereby give, devise and bequeath to Louis Leroy Kitchen, all of my property in fee simple, without any restrictions or qualifications.

Item No. 3. I, Mary Blue, for and in consideration of the provisions hereinbefore made by my husand Herbert E. Blue, hereby give, devise, and bequeath to my said husband, should he survive me, all of my property, in fee-simple, without any restrictions or qualifications. Should my said husband, however, not survive me, I hereby give, devise and bequeath to my son Louis Leroy Kitchen, all of my property, in fee simple, without any restrictions or qualifications.

Item No. 4. We and each of us hereby nominate and appoint as executor of this our joint and mutual last will and testament, Orba W. Bowbeck, R.F.D. 2, Syracuse, Indiana, as executor such to sell and dispose of only so much property as shall be necessary to settle the debts and obligations of each of us.

In witness whereof, we and each of us have hereunto set our hands and seals, this 17th day of April, A.D. 1936.

/s/ Herbert E. Blue (Seal)
/s/ Mary Blue (Seal)

Signed, sealed and declared by each of said Herbert E. Blue and Mary Blue, as and for their joint and mutual will and testament, and signed by us as witnesses thereto, at their request, in their presence and in the presence of each other, this 17th day of April, A.D. 1936.

/s/ Grace J. Steffey
/s/ Wallace W. Mehl

Goshen, Indiana.
Goshen, Indiana.
Addresses"

Also in 1936 Herbert and Mary purchased the outstanding four-fifths of Tract C.

Mary died in 1937 and the above will was admitted to probate, primarily to determine inheritance tax. Through the will Herbert became sole owner of one-fifth of Tract C and various items of personal property. By right of survivorship Herbert also became sole owner of four-fifths of Tract C and all of Tract A, subject to the mortgage.

In 1940, while Louis was in the Army, Herbert married Emma Blanche Blue (Blanche). The two lived on Tract A and Blanche continued to work in a factory for about a year and then she assumed significant farm duties, including running an egg business. During this time Herbert and Blanche made the payments on the Tract A mortgage and it was released in 1942.

In 1943 Herbert and Blanche purchased Tracts D and E as tenants by the entireties. Through a straw man transaction, in 1944, Herbert and Blanche transferred Tract A into their names as tenants by the entireties. Tract B was purchased in 1945 and in 1950, again in a straw man transaction, they transferred Tract C into their names. Thus by 1950 Herbert and Blanche owned, as tenants by the entireties, Tracts A through E, which amounted to almost 203 contiguous acres of farm and woodland.

On May 25, 1973, Herbert and Blanche sold the land, except for one-half acre of Tract B, on contract to the Thwaits. The purchase price was $80,000.00, with $1,500.00 annual payments and six per cent interest on the balance.[1] On May 31, 1973, Herbert executed a new will which left his entire estate to Blanche and if she predeceased him then Louis was to receive $2,000.00 and the residue went to Blanche's children from her previous marriage.

Herbert died on June 21, 1980 at age 87. Blanche was then 79 years old and Louis was 60. When he died Herbert's assets were worth almost $130,000.00, but initially no estate was opened, because all of these assets were held as survivorship property with Blanche. However, Louis petitioned for the opening of the estate, and, after he was appointed executor, Louis filed a claim against the estate for all of Herbert's assets. Trial testimony adduced that Blanche had no actual knowledge of Herbert's first will and no knowledge of the specific nature of Louis' claim.

Louis prosecuted his claim on the theory that Herbert and Mary's 1936 will was a joint and mutual will that created a binding contract not to revoke. The trial court found for Louis, to the extent of finding that he had a valid interest in Tract C and 40 per cent of Tract A (forty per cent is equal to the portion of Tract A that was not subject to a mortgage when Mary died). This portion of the judgment was based on a finding that the straw man transfers of Tracts A and C were fraudulent conveyances, undertaken to deprive Louis of his inheritance. The trial court also found that the Thwaits' land contract was valid. Therefore the trial court, in effect, found that Louis inherited the part of the balance of the land contract attributable to the value of Tract C and forty percent of Tract A. In determining Louis' share the trial court deducted, as claims against the estate, Herbert's funeral expenses and the statutory survivor's allowance.

■ The first issue for discussion is raised by Blanche. She argues that the trial court erred by finding that Herbert and Mary's 1936 will was a joint and mutual will that created a contract not to revoke. In support she correctly points out that the person seeking to prove a contract not to revoke a will has the burden of proving irrevocability by clear, definite, convincing, unequivocal, and satisfactory evidence. *Wisler v. McCormack* (1980), Ind.App., 406 N.E.2d 361, *trans. denied.* She contends that Louis failed to carry this burden.

■ In order to create a contract not to revoke a will, no single verbal formula is

1. The Thwaits sold a portion of Tract C to the Grace Bible Church in 1974.

necessary. It is generally accepted that a strong indicia of such a contract is a joint will that treats the testators' property as a single unit, setting out a comprehensive plan for the property to go to the survivor and then to a third person, who is a logical beneficiary of both the testators. *In re Est. of Maloney v. Carsten* (1978), 178 Ind.App. 191, 381 N.E.2d 1263, *trans. denied.* Words such as "we," "us," "our" and "jointly" are not, by themselves, the clear and convincing evidence necessary, but they are some evidence. *Wisler, supra.* Where the will itself is insufficient to prove a contract of irrevocability, the person seeking to prove the contract must introduce extrinsic evidence to show, by the facts and circumstances surrounding the making of the will, that a contract was intended. *Moore v. Harvey* (1980), Ind. App., 406 N.E.2d 354.

■ In the present case Herbert and Mary Blue jointly executed what they called their "Joint and Mutual Last Will and Testament." By this document, they mutually agreed to leave their assets, as a whole, to each other with the survivor agreeing to leave Louis the remainder. Louis was a logical beneficiary, since at that time he was a minor, still living at home.

The entire document is cast in terms of "we," "our" and "jointly." The preamble recites that, "each is bound hereby to the disposition of the property...." Further, at trial, Louis introduced evidence that showed that, shortly after making the will, Mary believed that everything would eventually go to Louis. Shortly after Mary's death Herbert and Louis met with a lawyer and Louis was told that he would inherit everything after Herbert died. Finally, in the 1950's, Herbert offered Louis $500.00 if Louis would "sign-off" on the property. While, as Blanche urges, each of these individual pieces of evidence is perhaps capable of alternative interpretation, the overall weight of the evidence leads inexorably to the conclusion that Herbert and Mary's "Joint and Mutual Last Will and Testament" created a contract not to revoke.

■ Blanche also argues that even if a contract of irrevocability was intended, such contract is invalid because of insufficient consideration. Blanche points out that by operation of the 1936 will, Herbert received approximately $300.00 and now Louis is attempting to claim almost $130,000.00. The law is clear that the mutual promises of the makers of a joint and mutual will is sufficient consideration to support a contract not to revoke. *Lawrence v. Ashba* (1945), 115 Ind.App. 485, 59 N.E.2d 568, *reh. denied.* Therefore the trial court correctly held that Herbert and Mary's will created a valid contract of irrevocability.

Next, Blanche contends that Louis' claim is barred by the statute of limitations. She reasons that Herbert breached the contract not to revoke when Tracts A and C were transferred in 1944 and 1950. Blanche argues that regardless of which statute of limitation is applied the contract was breached over thirty years ago and time has long since run out.

■ It is unnecessary to decide which is the applicable statute of limitations. An action for breach of a contract to convey by will does not accrue until the death of the promisor. *Hopkins v. Ratliff* (1888), 115 Ind. 213, 17 N.E. 288; *Satterthwaite v. Estate of Satterthwaite* (1981), Ind.App., 420 N.E.2d 287, *reh. denied.* It is true that in special cases, where the joint will addresses specific assets or creates a particularized plan, an action can properly be maintained prior to the death of the surviving spouse. *See e.g., Sample v. Butler University* (1937), 211 Ind. 122, 4 N.E.2d 545, *modification granted upon rehearing* 211 Ind. 139, 5 N.E.2d 888. But even in this situation, where the surviving spouse has taken actions inconsistent with a specific plan to devise, the beneficiaries have the right to elect to sue on the anticipatory breach or to wait and sue the estate. *Indiana Life Endowment Co. v. Carnithan* (1915), 62 Ind.App. 567, 109 N.E. 851, *trans. denied.*

■ Louis filed his complaint less than one year after Herbert's death. This was well within any applicable statute of limitation and therefore Louis' action was timely filed.

■ The next issue, this one raised by Louis, concerns whether the trial court erred in holding that Herbert and Mary's will was not intended to include after-acquired property. Whatever the merits of Louis' argument it is unnecessary to consider the propriety of the trial court's ruling, because this case does not involve after-acquired property.

In the context of estates, after-acquired property is property acquired by the testator, after the date of making the will and which property is subject to disposition by will. In the present case, Herbert and Mary took legal title to Tract A before the joint will was made, and thus Tract A is not after-acquired property. The portion of Tract C that Mary inherited was also acquired before the will. The four-fifths of Tract C that Herbert and Mary purchased after the date of the will was purchased as tenants by the entireties and thus was not subject to disposition by will. *See, Summerlot v. Summerlot* (1980), Ind.App., 408 N.E.2d 820. Likewise Tracts B, D and E were purchased by Herbert and Blanche as tenants by the entireties and thus these also are not after-acquired property. Therefore none of the land could be brought into Herbert's estate as after-acquired property.

Louis next complains that the trial court improperly deducted $3,000.00 for Herbert's funeral expenses and $8,500.00 for the statutory survivor's allowance[2] from his inheritance. He contends that these

deductions were improper, because Blanche never filed a claim against the estate.

■ The Probate Code (IND.CODE § 29-1-1-1 *et seq.* (1982)) defines "claim" to include, "liabilities of a decedent which survive, whether arising in contract or in tort or otherwise, funeral expenses, the expense of a tombstone, expenses of administration, and all estate and inheritance taxes." (IND.CODE § 29-1-1-3 (1986)). The Code requires that all claims against an estate be filed within five months of the first published notice to creditors, or within one year of death. (IND.CODE § 29-1-14-1 (1982)). Further IND.CODE § 29-1-14-9 (1982) provides, in pertinent part:

"All claims shall be classified into one (1) of the following classes. If the applicable assets of the estate are insufficient to pay all claims in full, the personal representative shall make payment in the following order:
(1) Costs and expenses of administration.
(2) Reasonable funeral expenses....
(3) Allowances made under IC 29-1-4-1."

Regarding the survivor's allowance Louis has misconstrued the legislative intent. He argues that since IND.CODE § 29-1-14-9 classifies the survivor's allowance as a claim, the allowance is also a claim within the meaning of IND.CODE § 29-1-14-1 and must be filed for within the five month or one year time limit.

This argument ignores the special position that the survivor's allowance holds within the scheme of the Probate Code. By enacting the survivor's allowance the legislature has effectively written into every Indiana will, not containing clear con-

2. IND.CODE § 29-1-4-1 (1982) reads as follows:
"Sec. 1. The surviving spouse of a decedent who was domiciled in Indiana at his death is entitled from the estate to an allowance of eight thousand five hundred dollars ($8,500) in personal property. If there is no surviving spouse, the decedent's children who are under eighteen (18) years of age at the time of the decedent's death are entitled to the same allowance to be divided equally among them. If there is less than eight thousand five hundred dollars ($8,500) in personal property in the estate, the spouse or decedent's children who are under eighteen (18) years of age at the time of the decedent's death, as the case may be, are entitled to any real estate of the estate to the extent necessary to make up the difference between the value of the personal property and eight thousand five hundred dollars ($8,500). The amount of that difference is a lien on the real estate. An allowance under this section is not chargeable against the distributive shares of either the surviving spouse or the children."

trary intent, an $8,500.00 bequest over and above any other provision in the will. This is a strong expression of legislative intent that provision be made for surviving spouses and minor children. IND.CODE § 29–1–4–1 is not principally intended to create a debt that an estate owes; rather it defines a statutory right which can only be denied if the estate's assets are insufficient to first pay the administration and funeral expenses.

The purpose of the five month or one year time limit is to facilitate the orderly administration of estates, by establishing a time when the executor can be absolutely certain that all of the estate's debts have been identified. This purpose does not apply to the survivor's allowance, because the executor knows that if there is a surviving spouse or minor children, and the will does not clearly provide otherwise, then payment of the allowance is due.

Under prior laws the equivalent of the current survivor's allowance was held to not require the filing of a claim. *See, Rush v. Kelley* (1905), 34 Ind.App. 449, 73 N.E. 130; *Elkhart Co. Dept. of Pub. Welf. v. Kehr, Admr.* (1953), 124 Ind.App. 325, 112 N.E.2d 451, *trans. denied*. Louis argues that the 1976 amendment to IND.CODE § 29–1–14–9, which changed the first sentence from, "All claims and allowances shall be ..." to the present, "All claims shall be ...," evidences an intent to make the survivor's allowance fall within the filing requirements of IND.CODE § 29–1–14–1. On the contrary, the Comments make it clear that the amendment was merely intended to be a clarification of the allowance's high priority status. The policies underlying the survivor's allowance have not changed, and consequently no claim against the estate need be filed before the surviving spouse or the minor children can obtain the statutory allowance. Therefore, the trial court property granted Blanche her statutory right.

The trial court's judgment regarding deduction of the funeral expenses without any claim being filed presents an entirely different issue. The trial court found that Herbert and Mary's will created an obligation to pay the funeral expenses and therefore Blanche did not have to file a claim to recover this expense. This holding is contrary to both Indiana case law and Indiana statutory law.

IND.CODE § 29–1–1–3 clearly includes funeral expenses within the definition of "claim." One important purpose of IND. CODE § 29–1–14–1, is to establish which types of the statutorily defined claims fall within the five month or one year limitation. Of all the types of IND.CODE § 29–1–1–3 claims, only administrative expenses and governmental claims are excepted from the time limitation. Therefore the only conclusion that can be drawn is that a claim to recover funeral expenses must be filed within five months of the first published notice to creditors or within one year of death.

Indiana case law is clear that funeral expenses cannot be classified as expenses of administration and a claim must be filed within the statutory period. *Richardson, Admx. v. Richardson* (1976), 168 Ind.App. 658, 345 N.E.2d 251. Furthermore, *Lewis et al. v. Estate of Smith, etc.* (1959), 130 Ind.App. 390, 162 N.E.2d 457, *trans. denied*, holds that general language in a will directing an executor to pay funeral expenses does not obviate the need for a creditor to file a claim. As to the funeral expenses Blanche was a creditor of Herbert's estate. Since she did not file a claim within the statutory period, the trial court could not properly deduct this expense from Louis' share. Because of this error this case must be reversed and remanded to the trial court for recalculation of Louis' share of the real estate contract without deduction of the funeral expense.[3]

---

3. Louis also complains that the trial court committed a mathematical error in the original calculation of his share. On remand the trial court will have an opportunity to consider this issue and to correct the error if appropriate.

Finally Louis appeals the form of relief that he received. He urges that it was error for the trial court to have awarded him an interest in the land contract, which draws interest at six per cent, instead of awarding him a money judgment with interest at the statutory rate.

The original action in the court below was a hybrid of standard probate actions. The technical form of Louis' petition was as a claim against Herbert's estate. *See,* IND.CODE § 29–1–14–2 (1982). However, the legal determination that Louis was seeking was to have Herbert's second will declared void, and to be declared Herbert's legatee under the first will. *See,* IND. CODE § 29–1–6–6 (1982).

The trial court, by its judgment, found that Louis was a legitimate legatee and that by Herbert's first will Louis inherited Tract C and part of Tract A. Since the trial court also found that the Thwaits and the Grace Bible Church were good faith purchasers, the trial court was unable to award Louis possession of the land. The trial court instead awarded Louis alternative relief in the form of a portion of the land contract equal to the percentage that Tracts C and A contributed to the total value. Given the equitable nature of this action and that all parties came to this action with clean hands, this form of relief was entirely appropriate, because it placed the parties back in the positions they would have been in, had Herbert not made the fraudulent conveyances and had he not attempted to revoke the first will.

Therefore this case is reversed and remanded to the trial court for recalculation of the appellant's inheritance without the improper deduction. In all other things the trial court is affirmed.

Affirmed in part, reversed and remanded in part.

STATON, P.J., and GARRARD, J., concur.